W. W. GRAVES v. THOMAS HOWARD, Executor, et al.

(Filed 9 October, 1912.)

1. Husband and Wife—Wife's Separate Property—Limitation of Actions — Mortgages—Foreclosure—Wife's Disability—Interpretation of Statutes.

   A married woman holds her separate real and personal property free from any debts, obligations, or engagements of her husband, according to the provisions of our Constitution and the Revisal, sec. 2093; and since chapter 78, Laws of 1899, removes the disability of marriage, and Revisal, sec. 408, allows a wife to maintain an action without the joinder of her husband when it concerns her separate property, and against her husband, when it is between the husband and wife, and there being no exception in favor of the wife when she holds a claim against him, the statute of limitation will run against a note thus held by her.

2. Husband and Wife—Limitations of Actions—Once Commenced.

   When the statute of limitation has begun to run on a note, and afterwards the wife of the debtor becomes the owner, the fact that the husband has become the debtor to his wife thereon will not repel the bar, and the time of her ownership will be counted.

3. Mortgages—Power of Sale—Limitation of Actions—Obligations of Contract — Statutes—Remedy—Reasonable Time—Constitutional Law.

   Revisal, sec. 1044, declaring the power of sale contained in a mortgage shall be inoperative when the note it secured is barred by the statute of limitations, is applicable to those contracts which existed at the time of its becoming operative; but, as to those, it only affected an existing remedy, which does not impair the obligations of the contract, when a reasonable time has elapsed thereafter within which the action could have been instituted.

APPEAL by defendant from *Ferguson, J.,* at November Term, 1911, of WILSON.

This is a controversy between W. W. Graves, the purchaser under a second mortgage executed by J. B. Stickney, and the owner of the first mortgage, heard upon the following agreed . facts:

1. That on 4 January, 1900, J. B. Stickney and his wife, Martha H. Stickney, executed and delivered unto Mrs. M. P. Morgan of the State of Alabama, and the sister of J. B. Stick-.

ney, a mortgage deed upon certain lands lying and being in the town of Wilson, county of Wilson, North Carolina, containing two acres, and being the residence of the said J. B. Stickney and his wife, Martha H. Stickney, the said J. B. Stickney being the owner in fee thereof, which mortgage is duly recorded in Book No. 54 at page 579, in the office of the Register of Deeds of Wilson County, for the purpose of securing a note given by the said J. B. Stickney to the said M. P. Morgan for the sum of $1,000, due and payable on 4 January, 1901.

2. That on 17 January, 1903, for the purpose of securing the note given by the said J. B. Stickney to J. Alvin Clark, for $1,000, due one year after date, the said J. B. Stickney and wife, Martha H. Stickney, executed unto the said J. Alvin Clark a mortgage upon the same property described in the mortgage of J. B. Stickney and wife to M. P. Morgan, above referred to, which said mortgage was duly recorded in Book No. 66, at page 207, in the office of the Register of Deeds of Wilson County.

3. That thereafter, before 6 May, 1907, the said Mrs. M. P. Morgan died domiciled in the State of Alabama, having first made and published her last will and testament, which said last will and testament was duly admitted to probate in a court of competent jurisdiction, and the executor therein named duly and properly qualified under the laws of the State of Alabama.

4. That by the terms of her last will and testament the said M. P. Morgan bequeathed the said note to Martha H. Stickney, and the said note was thereafter duly and properly transferred and assigned to the said Martha H. Stickney by her executor.

5. That thereafter, to wit, on about 1 November, 1908, the said Martha H. Stickney died domiciled in the county of Wilson, State of North Carolina, having first made her last will and testament, in which said last will and testament she named Thomas Howard as executor, and the said last will and testament was duly admitted to probate in the Superior Court of Wilson County.

6. That by the terms of said last will and testament all the property of the said Martha H. Stickney was given to Thomas

Howard, as trustee, to be held by him upon certain uses and trusts fully set forth in the said last will and testament.

7. Thereafter, on the .... September, 1911, the said J. B. Stickney died domiciled in the county of Wilson, intestate, and no administration has been taken out upon his estate, he having left no property other than the real estate described and conveyed in the mortgage above referred to, and which had been allotted to him in appropriate proceedings as a homestead. At the death of the said J. B. Stickney he owed various mortgage indebtedness, and there were various judgments docketed against him, the aggregate of which amounts to more than the value of his said homestead.

8. That nothing whatever was ever paid by the said J. B. Stickney, or by any one for him, on account of the note, which he gave to the said M. P. Morgan, and which was due on 1 January, 1901, and which was secured in the mortgage given by him and his wife, Martha H. Stickney, to the said M. P. Morgan, being the mortgage hereinbefore referred to.

9. That on 31 October, 1911, J. Alvin Clark, pursuant to the power of sale contained in the mortgage above referred to, sold the property conveyed therein at public auction to W. W. Graves, for the sum of $7,700.

10. That the said Thomas Howard, executor of Martha H. Stickney, has threatened to cause the said real estate to be sold pursuant to the power of sale contained in the mortgage given by J. B. Stickney and wife to M. P. Morgan, and to take all necessary steps to have the said power of sale executed.

11. The said W. W. Graves contends that the purchaser under such a sale would acquire no title as against him; his contention being that, under the statute, more than ten years having elapsed since the note, secured in the mortgage, fell due, and no payments having been made thereon, neither the mortgagor nor her executors or administrators can execute such power.

12. The said W. W. Graves has agreed to and with the said Thomas Howard, trustee and executor aforesaid, that if the court shall be of the opinion that the power of sale contained in the mortgage aforesaid can be executed, that he will pay off

and discharge the indebtedness secured therein, claiming that he has a right, as such purchaser, to discharge any and all valid and existing liens.

Wherefore it is agreed that if upon the foregoing facts the court shall be of the opinion that the authority to execute such power of sale is inoperative and barred by the statute, the said Thomas Howard, executor aforesaid, will not demand and cause the same to be executed; but if the court shall be of the opinion that the authority to execute such power is not inoperative and barred, the said W. W. Graves will pay off and discharge the indebtedness secured in the said mortgage, without a sale being had.

The only legal question raised on these facts is whether the right of action and the right to foreclose under the first mortgage are barred by the statute of limitations, and it is admitted that the right of action on the note is barred if the time from 6 May, 1907, to 1 November, 1908, during which time the note and mortgage were the property of the wife of J. B. Stickney is counted. It is also admitted that the right to sell under the power of sale is barred if the act of 1905 is applicable and is constitutional, and applied to the facts of this case.

His Honor held that the claim of the defendant under the first mortgage and the right to sell were barred, and he excepted and appealed.

*Connor & Connor for plaintiff.*
*Pou & Finch and Thomas W. Shelton for defendant.*

ALLEN, J. The learned counsel for the defendant referred us to the decisions of the highest courts of Indiana, New Jersey, Louisiana, Wisconsin, and Pennsylvania, holding that the statute of limitations does not run in favor of the husband against a claim owned by his wife, to which we have given careful and respectful consideration.

The cases from these courts rest upon the principle of the common law, that the wife cannot maintain an action against her husband, because of the unity of the person, or upon the ground that the removal of the common-law disability by statute generally does not confer upon the wife the right to sue the

husband, in the absence of express legislative declaration to that effect, and as she cannot sue, the period of coverture is not counted against her.

If, therefore, the disability of marriage has been removed, and, in addition, the right to sue the husband has been conferred on the wife by statute in this State, it follows that the authorities relied on are not applicable, and the conclusion would seem to be inevitable, in the absence of an exception in the statute of limitations, that the period of coverture would be counted against the wife.

Under our Constitution and the Revisal, sec. 2093, the real and personal property of any female in this State, acquired before marriage, or to which, after marriage, she may become in any manner entitled, is her sole and separate estate and property, freed from any debts, obligations, or engagements of her husband, and by chapter 78, Laws 1899, the disability of marriage was moved (*Bond v. Beverly,* 152 N. C., 63), and since then the statute of limitations runs against the wife during coverture.

The Revisal, sec. 408, further provides that the wife may maintain an action without the joinder of her husband:

(1) When the action concerns her separate property.

(2) When the action is between herself and her husband; and our Court has construed this section to confer upon the wife the right to maintain an action against her husband. *Shuler v. Millsaps,* 71 N. C., 297; *McCormac v. Wiggins,* 84 N. C., 279; *Manning v. Manning,* 79 N. C., 293; *Robinson v. Robinson,* 123 N. C., 137; *Perkins v. Brinkley,* 133 N. C., 158.

The statutes of limitation contain no exception in favor of the wife when she holds a claim against her husband.

It therefore appearing that the common-law disability has been removed, that the wife may sue her husband, and that there is no exception in the statute of limitations, we are of opinion that the time from 6 May, 1907, to 1 November, 1908, must be counted against the defendant, and that the right of action is barred upon the note secured by the mortgage. This conclusion has been reached by other courts, under statutes similar to our own. *Wilson v. Wilson,* 95 Am. Dec., 197 (36 Cal., 447); *Estate of Deaver,* 106 Am. St., 375 (126 Iowa, 70).

The Court says in the California case: "How is the wife to avail herself of the use of the property, or place it in the category of her separate estate, unless she can recover it from the debtor? The debtor claims that the statute of limitations is running against her. How is she to avoid the bar, if she cannot sue, and the debtor will not pay without suit? There is no provision to prevent the statute running in such case. . . . Section 7 of the practice act authorizes the wife to sue alone 'when the action concerns her separate property,' and also 'when the action is between herself and her husband.' There is no limitation as to the kind of actions that may be maintained 'between herself and her husband'; and section 395, as amended in 1865-66, authorizes the husband and wife to testify on their own behalf, or on behalf of each other, as witnesses in actions between themselves, except in actions of divorce. This provision contemplates that there may be actions between husband and wife other than those relating to divorces. What are they, unless relating to rights of property? Disputes with respect to property may arise between them when the separate existence of the wife, and a separate right of property, is recognized at law, as in this State, as well as other matters; and when they do arise there is as great necessity for a judicial determination of the questions as when they arise between other parties. A litigation of the kind between husband and wife may be unseemly and abhorrent to our ideas of propriety, but a litigation in one form can be no more so than in another, and no more so than the necessity itself which gives rise to the litigation. The present policy of the law is to recognize the separate legal and civil existence of the wife, and separate rights of property, and the very recognition by the law of such separate existence, and rights at law as well as in equity, to hold and enjoy separate property, involves a necessity for opening the doors of the judicial tribunals to her, in order that the rights guaranteed to her may be protected and enforced"; and in the Iowa case: "No exception in behalf of married women, of actions against their husbands, is found in the statute of limitations. It provides that 'actions may be brought within the times herein limited re-

spectively, after their causes accrue, and not afterwards, except when otherwise specially declared. . . . Those founded on written contracts . . . within ten years'; Code, sec. 3447. As all exceptions not 'otherwise specially declared' are excluded, we are not permitted to insert any, even though we might think that, owing to the relation of the husband and wife, she should be relieved from the necessity of pressing her claims against her husband in order to keep them alive. That was a matter for legislative consideration, and does not constitute a reason for refusal by the courts to give effect to a specific statute to the contrary. . . . The cases cited from States where the common law prevails—that the husband may not sue the wife —are not in point, and those resting on statutes somewhat similar to ours do not meet our approval."

The case of *Wilkes v. Allen,* 131 N. C., 280, is not in conflict with this view, as it was decided before the disability of marriage was removed.

If, however, the rule was otherwise, and ordinarily the statute of limitations would not run in favor of the husband upon a contract with his wife, it appears in this case that the statute had begun to run before the wife became the owner of the note and mortgage, and as was said in *Causey v. Snow,* 122 N. C., 329: "The statute of limitations has begun to run before she received it, and her coverture did not stop it."

The appellant further contends that, although the right of action on the note is barred, there was no limitation as to the power of sale prior to the Revisal of 1905 (*Menzel v. Hinton,* 132 N. C., 660); that this became a part of the contract, and that the act of the Legislature (Revisal, sec. 1044), declaring that the power of sale in a mortgage shall be inoperative when the right of action to foreclose is barred, impairs the obligation of the contract and is unconstitutional and void.

The statute undoubtedly purports to deal with existing contracts, because it says: "Whenever an action to foreclose any such mortgage or deed of trust is now barred by the statute of limitations the authority to execute the power of sale contained therein shall be barred on the first day of January, 1907."

Did the Legislature have this power?

It is true that laws in force at the time a contract is made become a part of the contract, but this does not prevent a change in the remedy.

The rule, with its limitations, is well stated in Cooley Const. Lim., 402 *et seq.,* as follows: "Citizens have no vested right in the existing general laws of the State which can preclude their amendment or repeal, and there is no implied promise on the part of the State to protect its citizens against incidental injury occasioned by changes in the law. . . . The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other; hence any law which in its operations amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution. It is the civil obligation of contracts which (the Constitution) is designed to reach; that is, the obligation which is recognized by, and results from, the law of the State in which it is made. . . . Such being the obligation of a contract, it is obvious that the rights of the parties in respect to it are liable to be affected in many ways by changes in the laws which it could not have been the intention of the constitutional provision to preclude. 'There are few laws which govern the general police of a State, or the government of its citizens, in their intercourse with each other or with strangers, which may not in some way or other

affect the contracts which·they have entered into or may there-
after form. For what are laws of evidence, or which concern
remedies, frauds, and perjuries, laws of registration, and those
which affect landlord and tenant, sales at auction, acts of lim-
itation, and those which limit the fees of professional men,
and the charges of tavern-keepers, and a multitude of others
which crowd the codes of every State, but laws which may
affect the validity, construction, or duration, or discharge of
contracts?' But the changes in these laws are not regarded as
necessarily affecting the obligation of contracts. Whatever
belongs merely to the remedy may be altered according to the
will of the State, provided the alteration does not impair the
obligation of the contract; and it does not impair it, provided
it leaves the parties a substantial remedy, according to the
course of justice as it existed at the time the contract was
made. It has accordingly been held that laws changing rem-
edies for the enforcement of legal contracts, or abolishing one
remedy where two or more existed, may be perfectly valid,
even though the new or the remaining remedy be less con-
venient than that which was abolished, or less prompt and
speedy."

The Supreme Court of the United States, in *Terry v. An-
derson*, 95 U. S., 628, sustained a statute as reasonable which
gave only nine months and seventeen days within which to
enforce a claim, and said, upon the question now before us:
"This Court has often decided that statutes of limitation
affecting existing rights are not unconstitutional, if a reason-
able time is given for the commencement of an action before
the bar takes effect. *Hawkins v. Barney*, 5 Pet., 457; *Jackson
v. Lamphire*, 3 Pet., 280; *Sohn v. Waterson*, 17 Wall., 596, 21
I. Ed., 475; *Sturges v. Crowninshield*, 4 Wheat., 122. And
it is difficult to see why, if the Legislature may prescribe a
limitation where none existed before, it may not change one
which has already been established. The parties to a contract
have no more vested interest in a particular limitation which
has been fixed than they have in an unrestricted right to sue.
They have nō more a vested interest in the time for the com-
mencement of an action than they have in the form of the

action to be commenced; and as to the forms of actions or modes of remedy, it is well settled that the Legislature may change them at its discretion, provided adequate means of enforcing the right remain. We have had occasion to consider this subject at the present term, in *Tennessee v. Sneed,* not yet reported (*post*). In all such cases the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the Legislature is primarily the judge, and we cannot overrule the decision of that department of the Government, unless a palpable error has been committed. In judging of that, we must place ourselves in the position of the legislators and must measure the time of limitation in the midst of the circumstances which surrounded them, as nearly as possible; for what is reasonable in a particular case depends upon its particular facts."

This case was approved in *Koshkonong v. Burton,* 104 U. S., 675, and in *Turner v. New York,* 168 U. S., 94, the Court saying in the last case: "It is well settled that a statute shortening the period of limitation is within the constitutional power of the Legislature, provided a reasonable time, taking into consideration the nature of the case, is allowed for bringing an action after the passage of the statute and before the bar takes effect."

The same doctrine has been announced by our Court: "It is settled beyond controversy that while the Legislature has the power to extend or reduce the time in which an action may be brought, this is subject to the restriction that when the limitation is shortened 'a reasonable time must be given for the commencement of an action before the statute works a bar.' *Strickland v. Draughan,* 91 N. C., 103, and cases there cited; Cooley Const. Lim., 450 (8th Ed.), and cases there cited." *Nichols v. R. R.,* 120 N. C., 497.

The right to sell under the power did not expire under the statute for more than five years after its enactment, which was an ample protection of the rights of the parties.

We find no error.

Affirmed.