ALLEN, J., concurring in result; WALKER and HOKE, J. J., dissenting.
This is an action by the wife against the husband, alleging in her complaint the marriage and their living together as man and wife; that *Page 517 
the defendant contracted a venereal disease, and that he "took advantage of his marital relation with said plaintiff and infected her with said vile and loathsome disease," and asks for judgment "for actual and punitive damages."
The defendant filed a written demurrer to the effect that the complaint showing upon its face that the parties were man and wife prior to, and during all the time of the acts complained of, that "the complaint does not contain facts sufficient to constitute a cause of action." And further, that said action is "both without law to warrant the maintenance thereof, and also against the public policy of the State."
The court overruled the demurrer, and thereupon the defendant filed an answer, and upon the issues submitted, the jury found that the defendant "wrongfully and recklessly infected the plaintiff with a loathsome disease, as alleged in the complaint," and assessed the plaintiff's damages at $10,000; and further, that at the institution of this action the defendant was about to dispose of his property and remove it from this State for the purpose of defrauding the plaintiff.
The defendant excepted, and appealed from overruling the demurrer; for refusal to set aside the verdict; for permitting the plaintiff to testify that the day before they separated she informed him that he had infected her with venereal disease; and to testify that she estimated the value of his property to be worth between $25,000 and $50,000, and that he was disposing of it very rapidly, getting her to join in deeds for most of the property, and that he told her that he was going to Cuba to make his home, and to set up a bar-room.
The defendant also excepted to the following paragraphs in his Honor's charge:
1. "If you find as facts from the evidence, and by its greater weight, that the defendant knew that he was infected with a foul and loathsome venereal disease, and thereafter, although having such knowledge, he wrongfully had sexual intercourse with the plaintiff, and thereby infected her with said disease, that he did so willfully and recklessly — that is, in reckless and wanton disregard of the plaintiff's rights, being indifferent to her welfare, and not caring whether he infected her or not — then you should answer the first issue `Yes.'"
2. "She would be entitled to a just and reasonable compensation for whatever injuries she may have sustained as a necessary and proximate result of the defendant's wrong. She would be entitled to a just and reasonable compensation for any physical or mental suffering which followed as a necessary and proximate result of the defendant's wrong."
3. "If you come to the issue of damages, you might, if in your discretion you saw fit, allow the plaintiff punitive damages."
Judgment, and appeal. *Page 518 
The defendant made no motion to nonsuit, and does not contend that there was not sufficient evidence to justify the verdict on the first issue. "Did the defendant wrongfully and recklessly infect the plaintiff with a loathsome disease, as alleged in the complaint." He submitted no requests for instructions. The exceptions to the evidence do not require discussion. Practically the only point presented by this appeal is whether or not a cause of action is alleged in the complaint.
Paragraph 5 of the complaint alleges "that the defendant, by reason of his illicit relations with lewd and profligate women, contracted a venereal disease of a foul and loathsome character, and of a highly infectious and malignant nature, and although he well knew that he was so infected, and well knew the character of said disease and its dangerous and infectious nature, he concealed from the plaintiff the fact that he was so infected with said disease, and on or about the _____ day of ____, 1919, committed anassault and trespass upon the person of the plaintiff, and infected her with said foul and loathsome disease, injuring her and damaging her as hereinafter set out."
There can be no question in this day that if the defendant had violently assaulted his wife and caused serious bodily injury to her person, and humiliation to her, she could maintain an action for damages against him. Even under the obsolete ruling of the courts (for it was never statutory) that a husband could chastise his wife with immunity, there was an exception that he was liable if he caused her serious bodily harm or permanent injury.
In S. v. Monroe, 121 N.C. 677, it was held that a druggist committed an assault when he dropped croton oil on a piece of candy and gave it to a third party. It was a far greater assault for the husband to communicate to his wife, while concealing from her the fact that he was infected therewith, a foul and loathsome disease — which has caused her serious bodily injury, and which the medical books hold to be a permanent injury of which she can never be entirely cured.
In S. v. Fulton, 149 N.C. 485, the Court held that the husband was indictable for wantonly and maliciously slandering his wife under Rev., 3640, now C. S., 4230, which made it indictable for "any one to slander an innocent woman." The objection was there taken that this did not apply to the husband, by reason of the marriage relation, and that this had been so held in S. v. Edens, 95 N.C. 693. The Court overruled S. v. Edens, but held, by a divided Court, that the defendant in the Fulton case had a vested right to rely upon S. v. Edens. *Page 519 
The plaintiff, who was 22 years of age and living with her father at the time of her marriage, was shown to be of good character at that time, and ever since, by a minister of the gospel, and other witnesses, and even the defendant testified that "the plaintiff was a virtuous woman and was faithful to me during our married life, and yet is so far as I know — I don't say otherwise." He further testified that he was divorced from his first wife; that he committed adultery while living with his second wife, and furnished her with witnesses to prove it by which she got a divorce upon that ground; that he had had trouble in Gastonia on account of a woman, and says "women have always been my trouble. Have recently been convicted of being drunk and carrying a pistol." It was stated on the argument that the defendant has recently been convicted in Virginia, under the White Slave Act, and sentenced to 2 years, and has also been convicted and sentenced in that State for abduction of a girl under 16, and that case is pending on appeal.
The defendant also admitted, on cross-examination, that he has had venereal disease, and said: "Sometimes it takes me longer to get over a case of gonorrhea than others. Sometimes it takes me a month, sometimes four months, and sometimes six months." . . . "On Sunday after this suit was started I had a lewd woman in my automobile, and passed the plaintiff's house four times; I had my arm around the back of the seat."
Notwithstanding that the defendant had testified on the cross-examination that his wife was a virtuous woman, he intimated on being recalled that he was forced to marry her because she had become pregnant by him. The plaintiff testified that he did not have sexual intercourse with her until after the marriage, and that he tried to get her to procure a divorce from him, offering to furnish her with witnesses to prove his adultery while living with her. He did not deny this, and admitted that he had done this with his second wife to enable her to get a divorce. The testimony of the plaintiff was that she had contracted the disease from her husband, and as to her humiliation and physical injury sustained thereby, and the physician testified that she was thus infected, and that his diagnosis was confirmed by clinical findings and by laboratory tests of another expert. The defendant testified that on one occasion "plaintiff came to my office and could not get in; I was locked in, the woman in there got out."
As the plaintiff's counsel well said, aside from the question of assault, it is a well settled proposition of law that a person is liable if he negligently exposes another to a contagious or infectious disease,Skillings v. Allen, 173 (Minn.) N.W., 663, A fortiori the defendant would be liable in the present case whether guilty of an assault or not, and independent of the fraud or concealment. In Schultz v. Christopher, *Page 520 65 Wn. 496, and in Bandfield v. Bandfield, 117 Mich. 80 (cases cited by the defendant), the Court recognized that the infection of the wife with venereal disease by the husband was a tort, but held that upon their statutes, which differ from those in this State, the wife could not sue her husband for a tort upon her person. But in Prosser v. Prosser, (1920), 102 S.E. (S.C.), 787, under a statute which is verbatim, our Rev., 408, C. S., 454, it was held that "under such statute a married woman can maintain an action in tort against her husband for an assault upon her," holding that while it was otherwise at common law, a proper construction of this statute "gives to a wife every remedy against the husband for any wrong she might suffer at his hands. More than this, a wife has a right in her person, and a suit for a wrong to her person is a thing in action; and a thing in action is property, and is her property, and the action is therefore maintainable under Messervy v. Messervy, 82 S.C. 550."
In Graves v. Howard, 159 N.C. 594, Allen, J., said: "Rev., 408, further provides that the wife may maintain an action without joinder of her husband: (1) when the action concerns her separate property; (2) when the action is between herself and her husband; and our Court has construed this section to confer upon the wife the right to maintain an action against her husband, Shuler v. Millsaps, 71 N.C. 297; McCormac v. Wiggins, 84 N.C. 279;Manning v. Manning, 79 N.C. 293; Robinson v. Robinson, 123 N.C. 137; andPerkins v. Brinkley, 133 N.C. 158."
The defendant objects that this applies only to property rights concerned in actions, but damage or injury to her person is a property right. Our statute, 1913, ch. 13, provides: "The earnings of a married woman, by virtue of any contract for her personal service, and any damagefor personal injuries or other torts sustained by her, can be recovered by her suing alone, and such earning or recovery shall be her sole and separate property as fully as if she had remained unmarried." This gives her the right of recovery of damages for any personal injury or other tort sustained by her, and there is no exemption of her husband from liability in an action by her which she is authorized to bring under Rev., 408; C. S., 454. As long as the Court held (Price v. Electric Co., 160 N.C. 450) that the recovery by the wife of damages for personal injuries was the property of the husband, it was useless for her to use him under the right given by Rev., 408 (2), but the act of 1913, ch. 13, making such damages her property was promptly passed at the first session of the General Assembly thereafter curing this and enabled the wife to maintain an action against her husband to recover damages for injuries committed upon her person by him. *Page 521 
For the same reason that in S. v. Fulton, supra, the Court held that the statute making "any one" liable to indictment for the slander of a virtuous woman made the husband liable to such indictment, notwithstanding the common-law theory, and even the express decision in S. v. Edens, supra, to the contrary, we must hold that the statute of 1913, ch. 13, and Rev., 408, gave the wife a right to recover damages for injuries to her person, or for other torts sustained by her, against her husband as fully as against any one else, as was held in Prosser v. Prosser, supra.
In 26 R. C. L., 577, it is said: "The fact that a case is novel does not operate to defeat a recovery if it can be brought within the general rules applicable to torts." In Brown v. Brown (1914), 88 Conn. 42, that Court pertinently says that "if the wife may sue for a broken promise, why may she not sue for a broken arm?" Like the South Carolina Court, in theProsser case, it holds that her claim for damages is a property right. It says: "The tort gives rise to a claim for damages. Such a claim isproperty, not in her possession, but which she may by action reduce into possession, just as she might before her coverture have had an action against him for such a tort committed before that event. The husband's delict, whether a breach of contract or a personal injury, gives her a cause of action. Both necessarily follow from the fact that a married woman now retains her legal identity and all her property, both that which she possessed at the time of marriage and that acquired afterwards."
In Johnson v. Johnson (Ala.), 77 So. 335, the Court held that the statute of that State authorizing the wife to recover damages for injuries to her person or reputation made the damages her separate property, and the statute which authorized her to sue alone for their recovery, authorized her to sue her husband for such injuries and torts, abrogating the common-law fiction of identity between husband and wife to that extent. The statutes of that State upon that subject are almost identical with ours above quoted.
Fielder v. Fielder, 42, Okla., 124, held that a married woman could maintain an action against her husband for injuries received from a gun shot wound inflicted during coverture. That case, referring to Thompson v.Thompson, 218 U.S. 611, pointed out that the latter decision was based upon the statutes for the District of Columbia, which in this respect are not as liberal and progressive as in most of the States, and the Court concurred in the dissenting opinion of Justices Harlan, Holmes, and Hughes
(which, in the opinion of the writer, was the "big end" of the Court at that time).
In Gilman v. Gilman, 78 N. H., 4, it was held that the statute of that State, providing that a married woman may "sue and be sued on any *Page 522 
contract by her made, or for any wrong done, as if she were unmarried," put husband and wife on an equality as to property, torts, and contracts, and that she could maintain an action against her husband for assault as fully as she could against any one else. In Fitzpatrick v. Owens, 124 Ark. 167, the Court held that a married woman may maintain an action against her husband for a tort, in that case for an assault, and when it resulted in a wrongful death her administrator could maintain an action therefor. And this is the trend of recent decisions throughout the country, 13 R. C. L., 1397; and notes 1915 D, p. 73.
As to the suggestion that the defendant could be indicted, that was a matter for the State, which has not thus proceeded, and a conviction would be no reparation to the plaintiff. Besides, if the unity does not prevent as indictment, why should it prevent a civil action?
At common law neither civil nor criminal actions could be maintained by the wife against the husband because of the alleged unity of persons of husband and wife, or rather the merger of the wife's existence into the husband's. The real reason was that by marriage the wife became the chattel of the husband (as a reminder of which to this day at a marriage some man "gives the woman away"), and therefore her personal property by the fact of marriage became his, as was the case in this State as to wives until the Constitution of 1868, though as to slaves it had ceased on their emancipation in 1865. The owner lost the right to chastise his slaves in 1865, but the wife was not emancipated from the lash of the husband till nine years later, in 1874, when in S. v. Oliver, 70 N.C. 60, Settle, J., tersely said, "We have advanced from that barbarism." His authority for making such ruling was that ch. 5, Laws 1715, and ch. 133, Laws 1778, now C. S., 970, adopted such parts only of the common law which are "not abrogated, repealed, or become obsolete." So much of the common law as exempted the husband from liability civilly or criminally for assaults, slanders, or other torts or injuries committed by him on his wife is invalid now, both because it has become obsolete and at variance with the customs and sense of right, and with our form of government, which confers "equality before the law" upon all, and because it has been expressly abrogated and repealed by the statutes above quoted, which confer upon the wife the right to sue and be sued alone, "when the action is between herself and her husband," and to recover, suing alone, damages for her personal injuries or other torts sustained by her (act 1913, ch. 13, now C. S., 2513) without exempting her husband from such liability.
The true ground for the exemption formerly of the husband from liability to the wife for his torts, and for his assumption of her property, as already said, was because by the marriage she became his chattel. The fanciful ground assigned for this doctrine, which was far more unjust to *Page 523 
married women than that prevailing in other countries under the Civil law or even in the countries under the rule of the Koran, is stated by some of the old writers to be the words in Genesis 2:23-24: "And Adam said, `this is now bone of my bones and flesh of my flesh,'" adding that a man and wife "shall be one flesh." And now, "speaking for myself and not by commandment" (as St. Paul said on more than one occasion, 1 Cor., 7:6, and 2 Cor., 8:8), this statement was made by Adam and not by Deity, and is untrue as a matter of fact, besides Adam was not a lawgiver, but the most culpable lawbreaker known to all the ages. The consequence of his lawbreaking, according to the belief of multitudes, was the greatest and most universal of any man, and according to orthodox teachings, affects all mankind since, and if we are to credit the vision of the great English poet, had its immediate effect upon the inanimate world as well:
 "Earth felt the wound; and nature from her seat, Sighing through all her works, gave signs of woe That all was lost." — Paradise Lost, Book IX, line 782.
It is more than passing strange that in this day of enlightenment, this statement by the greatest malefactor of history, who could frame no laws for any future day and generation, nor keep those made for himself, should be solemnly cited to justify the continuance of age-long injustice and degradation to one-half of the human race. The origin of such treatment was perhaps natural in the economic conditions of a barbarous age, when superior physical force made the wife the slave of the husband. But those conditions have passed. All the conditions and customs of life have changed. Many laws have become obsolete, even when not changed by statute, and the Constitution, as this has been, and no principle of justice can maintain the proposition in law, or in morals, that a debauchee, as the defendant admits himself to be, can marry a virtuous girl, and, continuing his round of dissipation, keep up his intercourse with lewd women, contracting, as he admits, venereal disease, communicate it to his wife, as the jury find, subjecting her to humiliation and ruining her physically for life, and seeking to run off with all his property, abandoning her to utter indigence; yet be exempted from all liability by the assertion that he and his wife are one, and that he being that one, he owes no duty to her of making reparation to her for the gross wrong which he has done her.
It must be remembered that there is not, and never has been, any statute in England or this State declaring that "husband and wife are one, and he is that one." It was an inference drawn by courts in a barbarous age, based on the wife being a chattel, and therefore without any rights to property or person. It has always been disregarded by *Page 524 
courts of equity. Public opinion and the sentiment of the age as expressed by all laws and constitutional provisions since have been against it. The anomalous instances of that conception, which still survive, in some courts are due to construing away the changes made by corrective legislation or restricting their application.
Whether a man has laid open his wife's head with a bludgeon, put out her eye, broken her arm, or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to "love, cherish, and protect" her. Civilization and justice have progressed thus far with us, and never again will "the sun go back then degrees on the dial of Ahaz." Isaiah, 38:8.
No error.