KATHERINE H. ETHEREDGE v. CLAUDE A. COCHRAN AND JAMES P. HARRIS, ADMINISTRATORS OF THE ESTATE OF C. LANE ETHEREDGE, DECEASED.

(Filed 27 February, 1929.)

**Husband and Wife—Wife's Separate Estate—Rights and Liabilities of Husband—Gifts—Presumptions.**

Under the change made in the law of married women's property rights by C. S., 2506, and Article X, sec. 6 of our Constitution, whereby a married woman is authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried, with certain restrictions as to her real estate, C. S., 2507, it is *Held,* where she receives checks from her parents as a personal gift to her which she endorses and delivers to her husband, there is a presumption that he receives the money in trust for her, and in the absence of evidence that it was a gift, she may recover the same in her action against him, or, after his death, against his personal representative.

APPEAL by defendants from *Harwood, Special Judge,* at October Special Term, 1928, of MECKLENBURG.

C. Lane Etheredge was the sole owner and proprietor of an unincorporated business which he conducted in the city of Charlotte under the name of the Etheredge Motor Sales Company. W. V. Hartman, of Pittsburgh, Pa., the plaintiff's father, gave her the sum of $45,000 in the three checks as follows: (1) A check for $10,000 dated 12 May, 1922; (2) a check for $15,000 dated 4 March, 1924, drawn by the Mellon National Bank of Pittsburgh on the National Bank of Commerce of New York, payable to the order of the plaintiff; (3) a check for $20,000 dated 11 February, 1924, drawn by the Mellon National Bank of Pittsburgh on the Bank of America, payable to the order of the plaintiff. All these checks were endorsed in due form by the plaintiff. C. Lane Ether-

edge died on 2 July, 1926, and on 7 July, 1926, the defendants qualified as administrators of his estate.

The plaintiff brought suit to recover of the defendants the sum of $45,000, the aggregate amount of the checks, alleging in substance that the intestate had received and had never accounted to the plaintiff for any part of this amount. The defendants answered, admitting that their intestate had received of the plaintiff $10,000 on 12 May, 1922, $20,000 on 14 February, 1924, and $15,000 on 7 March, 1924, and that no part of either sum was thereafter received by the plaintiff from the intestate or from the defendants. The defendants' motion for nonsuit was overruled and they excepted. Thereupon they tendered instructions to the effect that if a wife, having money in her possession which belongs to her, by her voluntary act transfers it to her husband, the law presumes the transfer to be a gift in the absence of evidence tending to show a loan; and that the burden of proving that the transaction was a loan was upon the plaintiff. These prayers were refused and the trial judge instructed the jury that if a wife, having funds in her possession, transfers the same to her husband there is a presumption, nothing else appearing, that the transaction is a loan and that the husband will undertake to repay it; and, further, that it is incumbent upon the husband who asserts it to show that the transfer is a gift.

It was admitted that the claim for $10,000 is barred and the jury returned a verdict for the plaintiff in the sum of $35,000. Judgment for plaintiff. Exception and appeal by defendants.

*Whitlock, Dockery & Shaw for plaintiff.*
*F. A. McCleneghan and Taliaferro & Clarkson for defendants.*

ADAMS, J. It is admitted that the plaintiff was the owner of the checks; that she duly endorsed them; that her husband collected them, and that the plaintiff has never been repaid. The question is whether the transfer of the wife's money to her husband raised the presumption of a loan or the presumption of a gift.

On this question judicial opinion is not unanimous, but the weight of authority and, we think, the better reasoning uphold the doctrine that where the separate property of the wife comes into the hands of her husband either from her directly or from another duly authorized to act for her there is no presumption that the transfer is a gift. The doctrine is clearly stated in *Stickney v. Stickney,* 131 U. S., 227, 33 Law Ed., 136, 143 : "Whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him." When, as with

us, the property of a married woman is her sole and separate estate and is free from liability for the debts or obligations of her husband, the presumption is that it continues hers. *Grabill v. Moyer,* 45 Pa., 533. In *Bergey's Appeal,* 60 Pa., 408, 100 Am. Dec., 578, it was shown that the husband and wife were together when the wife was paid a sum of money out of her father's and her mother's estates; that the husband "picked up the money, counted it, and did not put it down again," but invested it in a farm. In reference to the question whether the transaction was a gift to the husband the Court said: "Not a word was spoken by the wife when her husband took up the money to count it, and put it in his pocket. Nor do we ever hear of a word thereafter to the effect that the wife had made a gift of it. No inference of a gift from the transaction as detailed could, we think, arise. She was not bound to attempt a rescue of it from him, or proclaim that it was not a gift. She might rest on the idea that his receipt, in her presence, was with the intent to take care of it for her." These two cases are cited with approval in *Stickney v. Stickney, supra;* and in *Parrett v. Palmer,* 8 Ind. Appeals, 356, 52 A. S. R., 479, a similar conclusion is based upon additional citations: "We have here a case where the wife's money passes directly and voluntarily from her hands to that of her husband, with no finding as to whether a gift was intended, or whether he received the money simply as an agent or trustee for her. Under such circumstances, what is the presumption of the law? It has long been conceded to be the law that a woman could bestow her separate property upon her husband by way of gift, unless prevented by some special limitation of her powers over it, but courts of equity view such transactions with care and caution, and in dread of undue influence: Story's Equity Jurisprudence, sec. 1395. 'There is no doubt that courts should narrowly scrutinize cases of alleged gifts from the wife to the husband.' *Hardy v. Van Harlingen,* 7 Ohio St., 208: 'As regards the *corpus* of the separate estate, no presumption arises in favor of a husband who has received it. He is prima facie a trustee for his wife, and a gift from her to him will not be inferred without clear evidence.' 2 Lewin on Trusts, 778: 'A simple payment by the wife to the husband of the income of her separate estate may be treated as a gift to him. . . . The receipt by him of separate capital moneys of the wife stands on a different footing. A transfer of her separate property into his name is prima facie no gift.' Crawley's Law of Husband and Wife, 268. So, also, in Eversley on Domestic Relations, 409: 'She may make a gift of her separate property to her husband for his own use, or that of the family, but the onus lies upon the husband of proving that a gift was intended, and that he has not influenced her act and conduct.' *Rich v. Cockell,* 9 Ves., 369; *Hughes v. Wells,* 9 Hare, 749; *Wales v. Newbould,* 9 Mich., 45; *Boyd v.*

*De La Montagnie,* 73 N. Y., 498; 29 Am. Rep., 197; Reeves on Domestic Relations (4 ed.), 216, note; *McNally v. Weld,* 30 Minn., 209; *Green v. Carlill,* 4 Ch. Div., 882; *Jones v. Davenport,* 44 N. J. Eq., 33; *Bergey's Appeal,* 60 Pa. St., 408; 100 Am. Dec., 578."

This we understand to be the prevailing rule where the wife holds her separate personal property as if a *feme sole.* It is provided by statute and by the Constitution that the real and personal property of any female in this State, acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised and bequeathed, and, with the written assent of her husband, conveyed by her as if she were unmarried. C. S., 2506; Constitution, Article X, sec. 6. It is further enacted that subject to the provisions of C. S., 2515, every married woman is authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried, but no conveyance of her real estate shall be valid unless made with the written assent of her husband as provided by section 6 of Article X of the Constitution, and her privy examination as to the execution of the same taken and certified as now required by law. C. S., 2507.

By virtue of these and other provisions the relation which married women formerly sustained to their husbands has been materially modified. Unity of person in the strict common-law sense no longer exists, and many of the common-law disabilities have been removed. Not only may they contract with each other; a married woman may now sue her husband in contract or in tort. *Dorsett v. Dorsett,* 183 N. C., 354; *Roberts v. Roberts,* 185 N. C., 566.

We apprehend that it was considerations of this kind that led the Court to remark in *Stickney v. Stickney, supra,* "There are decisions of courts of some of the other States, holding that a presumption arises of a gift from the wife to the husband of moneys placed by her in his hands, unless an express promise is made by him at the time that he will account to her for them or invest them for her benefit. But the decisions we have cited are more in accordance, we think, with the spirit and purpose of the Married Woman's Act, and only by conformity with them can it be fully carried out."

The reason for the rule is thus stated in *Parrett v. Palmer, supra:* "The trust and confidence ordinarily reposed by the wife in the husband; her natural reliance and dependence upon him for the management of her business; the fact that, as a rule, the husband is possessed of general business experience, while the experience of the wife is usually limited—

all these considerations sustain us in the conclusion that where the wife voluntarily delivers her money to the husband the law presumes that he takes it as trustee for her, and not as a gift, even though there be no express promise to repay."

The transaction raises not the presumption of a gift from the wife to the husband, but the presumption that he received and must account for the money. *Haymond v. Bledsoe,* 11 Ind. Appeals, 202, 54 A. S. R., 502; *Sykes v. City Savings Bank,* 115 Mich., 321, 60 A. S. R., 562; *King v. King,* 24 Ind. App., 598, 79 A. S. R., 287; *Comer v. Hayworth,* 30 Ind. App., 144, 96 A. S. R., 335, 13 R. C. L., 1371, sec. 416; 30 C. J., 680.

By some courts a distinction is drawn between receipt of the rents or income of the wife's estate and receipt of the *corpus* or principal. 13 R. C. L., 1387; *Estate of Hauer,* 140 Pa., 420, 23 A. S. R., 245. In considering the question before us it is necessary to keep in mind the further distinction between the husband's relation to his wife's property before and since the statutory "emancipation" of married women. Some of the cases cited in the appellant's brief must be read in the light of this distinction. In *Rea v. Rea,* 156 N. C., 529, the question was whether the wife's written transfer to her husband of shares of stock was subject to the provisions of C. S., 2515; and it was said that the section applies to contracts and not to gifts. None of these decisions is inconsistent with the conclusion we have reached. We find

No error.