RUBY MABE FULP v. JOHN ROBERT FULP.

(Filed 17 March, 1965.)

**1. Trusts §§ 13, 14—**

No resulting or constructive trust arises when a husband makes improvements on land owned by him with money furnished by himself and wife, even though he obtains his wife's money by promising her to convey to her a half interest, since the husband did not acquire title to the realty with the use of her money in breach of a confidential relationship.

**2. Money Received—**

Where the husband obtains money from his wife for improvements on his realty by orally promising to convey to her a half interest, the wife is entitled to recover her personal funds as money had and received, notwithstanding the contract to convey is not enforceable upon plea of the statute of frauds, and since the husband's acts constitute a breach of a fiduciary relationship she is entitled to an equitable lien on the realty as an aid in enforcing her rights.

**3. Mortgages and Deeds of Trust § 1—**

An equitable lien is not an estate in land and does not entitle the creditor to a conveyance of any interest in the land but is solely a charge on specific property declared by equity to provide a more effective method of enforcing an obligation.

**4. Limitation of Actions § 18—**

Nonsuit is properly entered upon the plea of the applicable statute of limitations by defendant when plaintiff fails to carry the burden of showing that the statute had not run against his cause of action.

**5. Limitation of Actions § 11;   Husband and Wife § 2—**

The relationship of husband and wife does not prevent the statute of limitations from running in his favor against a cause of action accruing to her, or *vice versa.*

**6. Money Received—**

Where the husband obtains the personal funds of his wife for improvements upon his realty by orally promising to convey to her a half interest, her action for money had and received and for the declaration of an equitable lien against the land accrues upon his categorical disavowal of his promise, and is barred after the lapse of three years. G.S. 1-52.

FULP v. FULP.

APPEAL by plaintiff from *McConnell, J.*, March 30, 1964 Civil Session of FORSYTH. This appeal was docketed in the Supreme Court as Case No. 396 and argued at the Fall Term 1964.

This action by plaintiff wife was instituted on December 14, 1959, against defendant husband to establish a resulting or a constructive trust in land or, in the alternative, to recover money allegedly invested in improvements upon the property. In summary, plaintiff alleges: In 1937, defendant purchased specifically described land in Forsyth County with funds belonging to both parties and took title in his name alone. In 1951, defendant began construction of a dwelling house on the property. In consideration of defendant's promise to convey to her a one-half undivided interest in the land, plaintiff agreed to pay one-half the cost of the dwelling, the total cost of which was approximately $8,000.00. Plaintiff paid one-half of this cost, and after the house was completed she and defendant, with their three children, occupied it as their home. Defendant continued to promise plaintiff to convey to her a one-half undivided interest in the property but continually delayed doing so. On May 31, 1959, the parties separated, and defendant has told plaintiff that he did not intend to convey any interest in the property to her. On the contrary, he said he intended to convey the property to some third person in order to cut off her rights in the land. Plaintiff prays that she be declared the owner of a one-half undivided interest in the property and that the property be partitioned; or, in lieu of that relief, that she recover of defendant the sum of $4,-000.00. Defendant, by answer filed November 20, 1962, denied that he ever promised to convey any interest in the land to plaintiff. In addition, he pleads in bar of plaintiff's right to recover the statute of frauds, both the three-year and the ten-year statute of limitations, and laches.

Upon the trial plaintiff offered no evidence tending to show that she paid any part of the purchase price of the land which defendant acquired in 1937 and on which the dwelling was subsequently erected. Indeed, her evidence plainly shows that she made no contribution to the initial purchase of the property. With reference to the dwelling, however, her evidence taken in the light most favorable to her, is sufficient to establish these facts:

In 1938, defendant erected a one-room store building on the land. In 1944, with a partition wall, he made it into a two-room dwelling, into which the parties moved with their two children. In 1947, plaintiff went to work for Duplan Corporation at $50.00 a week. In 1951, the parties decided to add three rooms, a bath, and a basement to the house, each agreeing to pay one-half the costs. Together, each contributing identical amounts which varied from week to week, the

parties had saved for this purpose almost $4,000.00 before the work was begun. They kept this money in an old money belt under a mattress in the house. Defendant repeatedly promised, orally, to have the title to the property, which was in his name alone, put in the name of both. In 1952 when the work was all finished except for the bathroom, plaintiff had to cease work owing to confinement with her third child. She borrowed from her father $250.00, one-half the sum which defendant said was required to complete the bathroom, and handed it over to defendant, who had the work completed. When the remodeling was finished, the total cost was $5,000-$6,000. Plaintiff tried time and again to get defendant "to have her name put on the deed," and "he kept promising that he would." During the construction of the house he would say, "Oh, we'll do that later . . . we will, but let's go ahead with it." When the remodeling was completed, plaintiff said, "Well, it is done, let's fix the deed." Defendant's reply was, "You don't think I am a damn fool, do you?" Plaintiff and defendant separated on May 31, 1959, and have not lived together since.

At the conclusion of plaintiff's evidence, defendant's motion for judgment as of nonsuit was overruled. Defendant testified that he had never promised to convey any land to his wife; that they had saved no money together; that she paid nothing whatever on the additions to the house; and that he had paid it all. At the conclusion of all the evidence, the judge allowed defendant's renewed motion for judgment as of nonsuit. From a judgment dismissing the action, plaintiff appeals.

*Frank C. Ausband and Randolph and Clayton for plaintiff.*
*Hayes & Hayes for defendant.*

SHARP, J. Plaintiff's evidence is insufficient to establish either a resulting or a constructive trust in the land described in the complaint, for defendant acquired no *title* to realty with the use of plaintiff's money. "(A) resulting trust arises, if at all, in the same transaction in which the legal title passes, and by virtue of consideration advanced before or at the time the legal title passes, and not from consideration thereafter paid." *Rhodes v. Raxter,* 242 N.C. 206, 208, 87 S.E. 2d 265, 267. When one person's money is used to pay for land, title to which is taken in the name of another, equity creates a trust commensurate with his interest in favor of the one furnishing the money. *Bowen v. Darden,* 241 N.C. 11, 84 S.E. 2d 289. A constructive trust, on the other hand, arises when one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship. *Teachey v. Gurley,* 214 N.C. 288, 199 S.E. 83;

Lee, North Carolina Law of Trusts § 11(a) (1963 Ed.) Plaintiff's evidence is insufficient to establish in herself any equitable title to the land; defendant did not acquire title with her money.

Notwithstanding, plaintiff's evidence is sufficient to establish that, in consideration of defendant's oral promise to convey her a one-half interest in the land, or "to have her name put on the deed," she turned over to him $2,500-3,000 of her money, with which he made improvements on his property. This contract to convey was not specifically enforceable because it was not in writing. Even so, defendant became liable to plaintiff, when he refused to convey, for all the money he received from her under it. *Wells v. Foreman*, 236 N.C. 351, 72 S.E. 2d 765. This would have been true even if the parties were strangers because such an obligation is enforceable in an action in *assumpsit* for money had and received, the most common medium of restitution. Because they were not strangers, plaintiff was entitled not only to a judgment for the money advanced but also to the remedy of an equitable lien.

"The most confidential of all relationships is that between husband and wife, and transactions between them, to be valid, particularly as to her, must be fair and reasonable." *Wolff v. Wolff*, 134 N.J. Eq. 8, 15, 34 A. 2d 150, 155; *accord, Matt v. Matt*, 115 Colo. 589, 178 P. 2d 419; *Brewer v. Brewer*, 84 Ohio App. 35, 78 N.E. 2d 919; *Hodes v. Hodes*, 173 Ore. 267, 145 P. 2d 299; 26 Am. Jur., Husband and Wife § 268 (1940).

> " 'Whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him.' . . . The reason for the rule is thus stated in *Parrett v. Palmer*, . . . (8 Ind. App. 356, 52 A.S.R. 479): 'The trust and confidence ordinarily reposed by the wife in the husband; her natural reliance and dependence upon him for the management of her business; the fact that, as a rule, the husband is possessed of general business experience, while the experience of the wife is usually limited — all these considerations sustain us in the conclusion that where the wife voluntarily delivers her money to the husband the law presumes that he takes it as trustee for her, and not as a gift, even though there be no express promise to repay . . .' " *Etheredge v. Cochran*, 196 N.C. 681, 682, 146 S.E. 711, 712; *accord, Bowling v. Bowling*, 252 N.C. 527, 114 S.E. 2d 228.

Here, there is no question of a gift, for plaintiff has testified that defendant expressly promised to convey her an interest in the land in

consideration of the money she advanced. In reviewing the motion of nonsuit we accept this testimony as true. Therefore, defendant had the duty to restore plaintiff her funds. Since she is able to trace the money into the improvements which defendant made on the land, any judgment obtainable would qualify as an equitable lien. *Trust Co. v. Barrett,* 238 N.C. 579, 78 S.E. 2d 730; *Edwards v. Culberson,* 111 N.C. 342, 16 S.E. 233.

An equitable lien, or encumbrance, is not an estate in land, nor is it a right which, in itself, may be the basis of a possessory action. It is simply a charge upon the property, which charge subjects the property to the payment of the debt of the creditor in whose favor the charge exists. "It is the very essence of this conception, that while the lien continues, the possession of the thing remains with the debtor or person who holds the proprietary interest subject to the encumbrance." 1 Pomeroy's Equity Jurisprudence § 165 (5th Ed., 1941). "(T)he doctrine of 'equitable liens' was introduced for the sole purpose of furnishing a ground for the specific remedies which equity confers, operating upon particular identified property, instead of the general pecuniary recoveries granted by courts of law." *Id.* § 166. In other words, an equitable lien, by charging specific property, provides an enforcement of the obligation more effective than that provided for the enforcement of the ordinary money judgment.

> " 'An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity out of the general considerations of right and justice, as applied to the relations of the parties and the circumstances of their dealings.' " *Garrison v. Vermont Mills,* 154 N.C. 1, 6, 69 S.E. 743, 744, 31 L.R.A. (N.S.) 450, 453, *modifying on rehearing* 152 N.C. 643, 68 S.E. 142; *accord, Burrowes v. Nimocks,* 35 F. 2d 152 (4th Cir.) ; *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409. See *Stanley v. Cox,* 253 N.C. 620, 630-631, 117 S.E. 2d 826, 833-834.

A lien in equity is analogous both to resulting and to constructive trusts, but between the two there is a fundamental difference, which is drawn in 4 Pomeroy, *op cit. supra* note 5, § 1234:

> "(T)he very essence of every real trust, express, resulting, or constructive, is the existence of two estates in the same thing,— a legal estate vested in the trustee, and an equitable estate held by the beneficiary. In an equitable lien there is a legal estate with possession in one person, and a special right *over* the thing held by another; but here the resemblance, which at most is external, ends.

> This special right is not an *estate* of any kind; it does not entitle
> the holder to a conveyance of the thing nor to its use; it is merely
> a right to secure the performance of some outstanding obligation,
> by means of a proceeding directed against the thing which is sub-
> ject to the lien. To call this a trust, and the owner of the thing a
> trustee for the lien-holder, is a misapplication of terms which have
> a very distinct and certain meaning."

In the absence of a contract an equitable lien most frequently arises
in cases where one person has wrongfully expended, for improvements
on his property, the funds of another, but instances of this sort of lien
are not confined to such cases. See Annot., Remedy of one whose money
is fraudulently used in the purchase or improvement of real property,
43 A.L.R. 1415, 1441. This remedy is not a necessary incident to the
action for money had and received but results only where there are
factors invoking equity, here the confidential relationship. In *Jones v.
Carpenter, supra,* the president of a corporation had used corporate
funds to make improvements upon his personal residence. In a suit
against him by the trustee of the bankrupt corporation, it was held
that, since defendant, while acting in a fiduciary capacity, had misap-
propriated corporate funds, plaintiff was entitled to follow the funds
and to assert an equitable lien on the property.

It is apparent, then, that at the time the improvements on defen-
dant's house were completed in 1952, plaintiff could have acquired an
equitable lien on the property for the amount of her money which de-
fendant had expended in making the improvements upon it. This brings
us to the decisive question in this case: Is plaintiff's action in assumpsit
barred by the three-year statute of limitations, which defendant has
pleaded? If so, the nonsuit was correct because "where a party against
whom the statute has been pleaded fails to sustain the burden on him
to show that limitations had not run against his cause of action, it is
proper for the court to grant a motion for nonsuit." *Solon Lodge v.
Ionic Lodge,* 247 N.C. 310, 317, 101 S.E. 2d 8, 13; *accord, Mobley v.
Broome,* 248 N.C. 54, 102 S.E. 2d 407.

Although the rule is apparently otherwise in a majority of the other
American jurisdictions — see 34 Am. Jur., Limitation of Actions § 377
(1941); Annot., Applicability of statute of limitations or doctrine of
laches as between husband and wife, 121 A.L.R. 1382, 1393, 1403 —,
yet in *Graves v. Howard,* 159 N.C. 594, 598, 75 S.E. 998, 1000, Ann.
Cas. 1914C, 565, 567, it was said:

> "The statutes of limitation contain no exception in favor of the
> wife when she holds a claim against her husband . . . Disputes
> with respect to property may arise between them when the sep-

arate existence of the wife, and a separate right of property, are recognized at law as in this State, as well as other matters; and when they do arise there is as great necessity for a judicial determination of the questions as when they arise between other parties. A litigation of the kind between husband and wife may be unseemly and abhorrent to our ideas of propriety, but a litigation in one form can be no more so than in another, and no more so than the necessity itself which gives rise to the litigation . . ."

The language of *Graves* is broader than its facts required. At the time the wife in that case became the owner of her husband's note, the subject of the suit, the note was already due. The statute, therefore, had already commenced to run. Under the rule that once the statute begins to run nothing stops it, Pell's Rev. § 365 (G.S. 1-20); *Frederick v. Williams*, 103 N.C. 189, 9 S.E. 298, it continued to run against the wife. That, and nothing more, was the *ratio decidendi* of *Graves*. Nevertheless, we approve the reasoning quoted above and hold that statutes of limitation run as well between spouses as between strangers. Curiously enough, this appears to be a question previously undecided in this State; see *Spence v. Pottery Co.*, 185 N.C. 218, 225, 117 S.E. 32, 36 (dissent).

Plaintiff's action is based on an implied contract and is analogous to one based on the breach of an express trust, which is necessarily based on a breach of contract. *Teachey v. Gurley, supra*. The limitation applicable to both such actions is three years. G.S. 1-52. In the case of an express trust the statute begins to run when the trustee disavows the trust with the knowledge of the *cestui que trust, Solon Lodge v. Ionic Lodge, supra*. Unquestionably, therefore, the statute of limitations began to run against plaintiff's claim against defendant when, upon the completion of the house in 1952, she called upon him to perform his agreement "to put her name on the deed" and he replied "You don't think I'm a damn fool, do you?" This was a flat repudiation of his agreement and was notice to plaintiff that he intended to misappropriate the funds which he had received from her through their confidential relationship. The defense of the statute is not barred by the existence of a fiduciary relation between the parties. *Henry v. Hammon*, [1913] 2 K.B. 515 (action for money had and received). Were plaintiff the *cestui que trust* of a resulting or a constructive trust, the ten-year statute would apply, G.S. 1-56; *Rochlin v. Construction Co.*, 234 N.C. 443, 67 S.E. 2d 464; *Bowen v. Darden, supra; Teachey v. Gurley, supra;* and, she sharing defendant's possession, the statute would not have begun to run against her until the separation of the parties on May 31, 1959, some seven years after the breach of promise,

*Solon Lodge v. Ionic Lodge, supra; Bowen v. Darden, supra.* The ten-year statute applies when the title to property is at issue, not where, as here, the action is merely for breach of contract, *Barden v. Stickney,* 132 N.C. 416, 43 S.E. 912, though the enforcing remedy, the equitable lien, is analogous to remedies for resort to which the statute of limitations is ten years. As we have seen, however, plaintiff's action is based upon an implied contract, the equitable lien which could have been imposed notwithstanding. See *Reynolds v. Whitin Mach. Works,* 167 F. 2d 78 (4th Cir.), *cert. den.* 334 U.S. 844, 92 L. Ed. 1768, 68 S. Ct. 1513. The applicable statute is G.S. 1-52, three years. This action was not instituted until December 19, 1959, at least four years after it was barred. The nonsuit was proper.

Affirmed.