*84
 
 Taylor, Chief-Justice,
 

 The land claimed by the Plaiu-tiff under Hislop’s patent, is described by the letters A, B, C, D, and E. “ Beginning at Whitehurst’s corner at the ((|e^ej) ^ . flience east along Ward’s line 80 poles, thence “ south on his line 320 poles to the back swamp.” If the lines first called for, be extended according to the course and distance in the patent, they would run from A to B, and thence to D, and leave out the land claimed by the Plaintiff ; but in so running, they would not be on or with Ward’s line ; they would depart from the boundaries called for in the patent, for the sake of preserving the course and distance. If the course of the first line, viz. east, be pursued, it will lead to F, and will not strike Ward’s line, which is insersected by running a course south 50° east, at the letter C : and the question is, whether after running the first line 80 poles, east, it shall diverge in the course nearest to that called for, for the purpose of meeting Ward’s line, and “ of running on it” 320 poles to the back swamp, although the course of Ward’s line is south 30° west, instead of south, as in the patent. The decisions which have taken place in this State on questions of boundary, have grown out of the peculiar situation and circumstances of the country, and have, beyond the memory of any persons now alive, been moulded to meet the exigencies of men and the demands of justice, where the mode of appropriating an almost uninhabitable forest, had involved land titles in extreme confusion and uncertainty. In many cases, survéys were no otherwise made than upon
 
 paper;
 
 and in many others, when an actual survey was made, the purchasers from the Lord’s Proprietors were in danger of losing their lands by an inaccurate description of them, the omission of whole lines, and the mistake of courses.J Land appropriated by a general description of courses and distances, without natural boundaries or marked lines, cannot be identified after the lapse of a considerable interval of time. If a beginning tree only were marked, the property continually revolves around
 
 *85
 
 it, and never can be ascertained
 
 •,
 
 for no person can pronounce what course must now be run in order to ascertain a line, said to be run in a certain direction an hundred years ago, from the uncertainty in the variation of the compass, and from carelessness or the want of skill in measurement. It is easy to conceive, therefore, how utterly impossible it would have been, to render any thing like justice to claimants under old patents, if the land described in
 
 them
 
 were to be allotted only according to the courses and distances, to the neglect of natural boundaries, marked lines, and the well established lines and corners of adjoining tracts. ^ Hence, certain rules have been laid down and repeatedly sanctioned by adjudications, which, in their application, have been found effectual for the just determination of almost every case that has arisen, and which have been considered for so great a length of time as part of the law of the country, that they ought not to be abrogated by any power short of that of the Legislative. These rules are,
 

 1.
 
 That whenever a natural boundary is called for in a patent or deed, the line is to terminate at it, however wide of the course called for it may be, or however short or beyond the distance
 
 specified.J
 
 The course and distance may be incorrect, from any one of the numerous causes likely to generate error on such a
 
 subject;
 
 but a natural boundary is fixed and permanent, and its being called for in the deed or patent, marks, beyond controversy, the intention of the party to select that land from the unappropriated mass. In confirmation of this rule, many cases have been decided, only a few of which have been reported 5 but as some of them are fully up to the rule, and have been uniformly acquiesced in, it may be useful to bring forward the principal features of them.
 

 In Sandifer
 
 v.
 
 Foster,
 
 *
 
 Gee’s patent began on the mouth of dividing run, thence north, thence east, thence south to a white oak, thence along the river to the beginning. This white oak stood half a mile from the river, and if the line
 
 *86
 
 were run thence to tlic beginning, a large part of the land described in the Plaintiff’» grant would be loft out of Gee’s patent.
 
 *
 
 it was decided that the river must be considered the boundary of Gee’s patent.
 

 In Pollock
 
 v.
 
 Harris,
 
 †
 
 a swamp, a pocosin and a marsh, arc severally called for in the patent, as the termination of lines, which if run according to the courses and distances did not extend to them. The natural boundaries were held by the Court to be the proper terminations of the lines. To these cases may be added Witherspoon and Wife
 
 v.
 
 Black.
 
 ‡
 
 Hammond
 
 v.
 
 McGlaughon, and Swaine
 
 v
 
 Bell Bethune
 
 §
 
 .
 

 2.
 
 Whenever it can be proved that there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the patent or deed, shall hold accordingly, notwithstanding a mistaken description of the land in the patent or deed.
 

 I understand the first decision of Bradford
 
 v.
 
 Hill,
 
 ǁ
 
 to foe an authority for this rule
 
 ;
 
 for although the Court directed the Jury to find according to the courses and distances called for in the deed, it was in the absence of proofs tending to establish the old marked line leading from Pollock’s to Bryant's corner. The boundaries in the patent were, “ beginning on Fishing Creek, thence east 320 poles
 
 “
 
 to Pollack’s corner, thence north the same number of poles to Bryant’s, thence along Bryant’s lines west 320
 
 “
 
 poles to the Creek” — Bryant’s corner being four degrees to the east of north from Pollock’s corner, the line from Pollock’s corner intersected Bryant’s line considerably to the west of Bryant’s corner. It was proved that there was an old marked line leading from Pollock’s to Bryant’s corner, hut that in running by the compass north 54° east, which was the general course of that line, it would be sometimes on the one side and sometimes on the other of that run by the compass,
 
 whence it was taken by the Jury to have been run by some person after the survey.
 
 The tri
 
 *87
 
 angle formed by the said north line, part of Bryant’s line, and a line from Pollock’s corner to Bryant’s corner, in-eluded the land in dispute. It was decided by the Court that the courses and distances in the deed must be adhered to, because the line from Pollock’s to Bryant’s corner, was not proved to have been run by the surveyor 5 but that in cases of evident mistake by the surveyor, parol evidence was admissible, though it ought to be admitted with caution.
 

 The same case under the name of Burton
 
 v.
 
 Christie,
 
 *
 
 came on for trial before Judge Moore, when the only additional fact proved was, that some ancient deeds were bounded by the old marked line from Pollock’s to Bryant’s corner. The Judge directed the Jury to establish that line, if they believed that to be the one intended.
 

 In Eaton
 
 v.
 
 Person, the deed called for a course and distance, which carried the second line through the body of the land, leaving out a triangular piece, included in the second and third lines really run
 
 ;
 
 but the second and third lines really run, as well as the corners, were marked and proved, by persons present at the survey for the patentee ; upon which evidence the claimant under the patentee recovered.
 
 †
 
 ,
 
 ‡
 

 In Person
 
 v.
 
 Roundtree,
 
 §
 
 the latter entered a tract of land, lying in Granville County, upon Shocco Creek, which was run out,
 
 “
 
 beginning at a tree on the bank of
 
 ts
 
 Shocco Creek, running south a certain number of poles
 
 i(
 
 to a corner, thence north a certain number of poles to a. <£ corner on the creek, thence up the creek to the beginning.” By a mistake, either in the surveyor or secretary who filled up the grant, the courses were reversed,.placing the land on the opposite side of the creek to that on which it was really surveyed,
 
 so that the grant did not cover any 0/ the-land surveyed.
 
 — Roundtree settled on the lánd surveyed, which was afterwards entered by Person, who obtained a deed fi'om Lord Granville, and brought an ejectment against Roundtree, who proved the lines of the survey and
 
 *88
 
 a possession under Ms grant. The Court decided that Roundtree was entitled to the land intended to be granted, and which was surveyed
 
 ;
 
 and that he should not be pte-ja¿jce¿ py the mistake of the surveyor or secretary. •
 

 It was decided by Judge Haywood, in the case of Beatty, that if a course and distance be called for, and there be a marked line and corner, variant from the course, which is proved to be the line made by the surveyor as a boundary, that marked line shall be preserved.
 
 *
 

 In Stanton
 
 v.
 
 Bains,
 
 †
 
 the Plaintiff claimed under As-kill, who patented a tract of landin 1740, extending, as he alleged, to a line distinguished in the plat by the name of the dotted line. The courses and distances expressed in the patent, extended not so far, but only to a line distinguished in the plat as the black line. The Defendant entered this intermediate tract in the year 1784, and took
 
 possession;
 
 whereupon the Plaintiff brought suit. The Court permitted evidence to be given, that the dotted line, wliich was a marked one, had, for a long time since the year 1740, been reputed the line of AskilPs tract. The patent called for a gum standing in Roberts’
 
 line;
 
 this gum. was found at the termination of the dotted line. It next called for two lines of Roberts’s tract; the dotted line was upon these two lines. It called for Hoskins’ corner
 
 •,
 
 the dotted line went to that
 
 corner;
 
 and there was nothing in favor of the black line, but course and distance. But there was no Avitness who could prove positively that the dotted line was the line of Askill’s tract.
 

 In Blount
 
 v.
 
 Benbury, Judge Hall says, there have been many decisions in this country which warrant a departure from the line described in the deed or patent, to follow a marked line, which the Jury have good reason to believe Avas the true one.
 
 ‡
 

 The circumstances of that case, of which I have a fuller note than any published, afford a striking confirmation of the rule. The question arose on the title of a piece of land,
 
 *89
 
 which lay between two parallel lines, A B and C D. The latter line was contended for by the Defendant as the line of J. Blount’s patent $ in which case, the Defendant was not in the possession of the Plaintiff’s land : but if the line A B was the line of J. Blount’s patent, the Defendant ivas in possession. The patent under which the Defendant claimed, called for Beasley’s line and Blount’s line at E, south 85° east, as one of the boundaries. The person under whom the Defendant claimed, in his deed dated in 1785, called for Blount’s line, and at the same time, marked as such, the line from C to D. The principal question was, whether the line thus marked should be the boundary of the deed, or whether Blount’s, wherever that should be ascertained to be, should be so considered. It is to bo remembered, that the line from A to B was an old marked line. It was decided by the Court, that Blount’s line, wherever it was, should be the boundary : that although the patent calls for Beasley’s line and Blount’s line south 85° east for one boundary ; still the Jury might consider Beasley’s line tho boundary as far as it went, and then the line A B, which was 51 poles to the north of it: and that line was consequently established.
 
 *
 

 In Johnson
 
 v.
 
 House,
 
 †
 
 Person surveyed the land for the patentee, under whom House claimed, and extended the line in question 160 poles, and marked and cornered it, as also the next line : but upon calculation, he found he had included 712 acres, instead of 640, and he cut off the land in question, by drawing from 80 poles instead of 160. But he returned a plat to the Secretary’s office, mentioning the corner red oak, marked at the end of 160 poles, and the corner white oak, marked at the end of the next line drawn from thence. The plat having been returned with those corners, although mentioned to stand at the distance of 80 poles instead of 160, they were taken, notwithstanding the distance mentioned in the plat, to be the true corners. The
 
 *90
 
 corner marked at the end of 80 poles, was a white oak instead of a red oak, called for in the patent.'
 

 These cases, and many others which have occurred since, sufficiently prove the existence of the rule, which, if it had not been adhered to, would, in every case cited, have deprived the true owner of part, or the whole of his land.
 

 3.
 
 Where the lines or corners of an adjoining tract arc called for in a deed or patent, the lines shall be extended to them, without regard to distance, provided those lines and corners be sufficiently established, and that no other departure be permitted from the words of the patent or deed, than such as necessity enforces, or a true construction renders necessary.
 

 This rule is founded upon the same reasons with the preceding ones, the design of all being to ascertain the location originally made; and calling for a well known line of another tract, denotes the intention of the party, with equal strength, to calling for a natural boundary, so long as that line can be proved.
 

 In Miller v. White,
 
 *
 
 the Plaintiff claimed under a patent to Nathan Bryan, beginning at a corner tree, thence south 80°, east 40 poles, to Walter Lane’s line. There was no actual survey, the 40 poles were completed before arriving at Lane’s line. The second line was with Lane’s line to his corner, a certain course and distance ,• but that distance would not reach the corner. Supposing the line to be drawn from the point of intersection of the first line with Lane’s line, if the first line extended to Lane’s liner and if the second line went with Lane’s line to his corner, then the land claimed by the Plaintiff was within Bryant’s grant. If the first line stopt at the end of 40 poles, the land in question was not included. Judge Johnston was. of opinion that the line should extend to Lane’s line.
 

 In Smith v. Murphey
 
 †
 
 the Defendant produced in evidence two deeds: the third course of the latter deed called for 42 poles to a corner standing on the other tract.
 
 *91
 
 Forty-two poles were completed before arriving at the first tract. If the last line of the second tract should be drawn from the point where the 42 poles were completed, the land which the Plaintiff had obtained a grant for, was Hot within any of the Defendant’s deeds; but if the line be extended beyond the 42 poles to an intersection with the lines of the other tract, then the land claimed by the Plaintiff was covered by the Defen ant’s second deed. It was held by the Court that the line should be extended to that of the other tract.
 

 4.
 
 Where there are no natural boundaries called for, no marked trees or cornel’s to be found, nor the places where they once stood can be ascertained and identified by evidence, or wdicre no lines or corners of an adjacent tract are called for, in all such cases, we arc, of necessity, confined to the courses and distances described in the patent or
 
 deed;
 
 for, however fallacious such guides may be, there are none others left for the location.
 

 A case recently decided may seem, upon a hasty glance, to limit the application of the third rule, and in some degree to shake its authority; but an accurate attention to the circumstances of that case, will show that the decision and the rule accord with each other. The words of the Plaintiff’s patent were, “ Beginning at a pine in or near “ his own line, and runs south 240 poles to a stake in Wil-
 
 “
 
 liam Hooks’ line, thence with or near his line, north 73° east, 400 poles to a stake, thence north 305 poles to a pine, thence to the beginning.” Hooks had three lines in the direction of the first line of the Plaintiff’s patent, the two first of which formed an acute angle, and the corner of a patent which was ten years older than the Plaintiff’s: the third line of Hooks formed one side of a patent which was seven years younger than the Plaintiff’s. The question in the case was, whether Hooks’s line which first presented itself as one side of the angle, that which formed the other side of the angle, or the still more distant line of the new patent, should form the
 
 terminus ad quern
 
 of the
 
 *92
 
 Plaintiff’s patent. The claim of the last line was rejected without hesitation, because, being made several years after the Plaintiff’s location, it could not have been called for in ^ 91U-Teys although there wras evidence of Plaintiff’s declarations that the patent was not surveyed ’till after the grant issued. The .Court decided in favor of the first line, as the establishment of that formed the least departure from the words of the patent, and as the course from that line wi s north 73° east, as called for in the Plaintiff’s
 
 patent;
 
 and would also run with or near Hooks’ line, which would not be the case, if the first line of the Plaintiff’s patent were extended to Hooks’ second or third line. Upon this case it is to be observed, that it is an express authority to shew that where the line of another tract is called for, the line calling for it shall be extended thither, and in the terms of the rule, witli no greater departure from the words of the patent than is necessary to satisfy them. The words of the Plaintiff’s patent were satisfied by stopping at the first line, and would have been departed from, if the line had been extended to the second. It was also a part of the case, that no actual survey of the Plaintiff’s land had been made till after the patent issued.
 
 *
 

 It may also be thought that the second rule and the cases which support it, are broken in upon by the late decision in Herring
 
 v.
 
 Wigg’s ;
 
 †
 
 but such an inference is not authorised by the very peculiar circumstances of that case. Michael Herring was the owner of a patent covering the whole land in
 
 dispute;
 
 and in 1778, conveyed to Keet-ley, under whom the Defendant claimed,
 
 “
 
 beginning at a
 
 “
 
 pine tree of Jacob Herring’s and George Graham’s land,
 
 “
 
 and running with George Graham’s line, and the same
 
 “
 
 course continued to a corner, including 100 acres of land, f£ running a north course to the patent. line.” Twenty-seven years afterwards, Michael Herring conveyed to his son the Plaintiff, by deed, which after describing several linos, called for £e Richard Keetley’s corner, a pine, thence
 
 *93
 

 “
 
 with Rutley’s line south 98 poles to a pine, standing by 44 the side of ,Gi-addy Herring’s fence.” The Plaintiff proposed .to proye by parol evidence that a marked line from jL to K was the true line of the Keetley deed ,* and he did prove that at the .time of the conveyance to him (the Plaintiff) Michael Herring- and himself actually ran to K, and thence to L, where there had stood the pine by Graddy •Herring’s fences and that Keetley had sent his son to shew this line. The Court were of opinion, that no parol evidence was admissible to show a line in contradiction to the deed, which would give less than 100
 
 acres;
 
 that as Keetley’s corner was admitted to be at IT, a line running thence could not alter the location, which was fixed by a prior deed from Michael Herring, to which, permanency was affixed by registration
 
 •,
 
 that as to the line in question, the deed did not purport to be bounded by a tree or a stake, but was to be .run in such'a w.ay as to include quantity. It was, therefore, a boundary, which could not be mistaken, altered, or changed by memory or reputation, but would always speak in the same tone of decisive notoriety. With respect to the cir' umstances of the land’s being run off before Michael Herring executed the deed to the Plaintiff, of the conduct of Keetley in recognizing the line K L as the true one, they wox-e held not to affect Keetley’s right, or to change that which was originally made the dividing-line by the deed from Herring to Keet-ley.
 

 This case does not affect the general
 
 rule;
 
 because the question in it was not where Keetley’s line was originally fixed, but whether, when the survey was made and the lines established so as to .include 100 acres, the posterior circumstances should have the effect of changing the line, so as to include a less quantity.
 

 The right of the case before us depends upon the application of the third rule. The patent calls for Whitehurst’s corner, which is ascertained to be at the letter A, and this is sufficient authority for running the course and dis
 
 *94
 
 tance of the next line from it, notwithstanding the unaccountable insertion of the words
 
 “
 
 along Ward’s line.” After running out the 80 poles, the words are “ thence on 'Ward’s line 320 poles to the Back Swamp.” Here we are presented with a choice of difficulties. If we run according to the course, we reach the Back Swamp, but we do not run on Ward’s lino. On the other hand, if we continue the first line in an eastern course, beyond the 80 poles, Ward’s line will never be touched. It is, therefore, less a question of- construction respecting the patent than of fact to be ascertained upon evidence to the Jury, whether the line described as
 
 Ward’s
 
 was the line originally called for, and according to which the land was located; and if Ward’s line be established by proof, whether the second line in Hislop’s patent was run from B to C, or from B to D. I am of opinion these facts ought to be enquired into by the Jury; for which purpose there must be a new trial.
 

 Diagrams referred to in the foregoing Opinion,
 

 
 *95
 

 Henderson, Judge.
 

 I think a
 
 venid fadas de novo,
 
 should be awarded, because the Jury, instead of finding the facts have only found the evidence. That the line C I) is Ward’s line or a line of a tract of land belonging to Ward, is matter of
 
 evidence,
 
 That it is the line of Ward
 
 *96
 
 called for in Hi,slop’s patent, is a question of fact, for the Jury to find from the evidence : and this fact may depend upon a variety of circumstances, ali proper for the consideration of a Jury. This error has become too common, from confounding the evidence with the facts. A line, when once established to be the one called for, no matter by what evidence (if it be legal evidence,) whether it be artificial or natural, will certainly control course and distance, as the more certain description. A natural boundary, such as a water course, is designated from other water courses by its name, or by its situation, or by some other mark. One of those means of identifying the water course cannot control all the rest, if those other means are inore strong and certain. A name, for instance, is the most common mean of designating it; and this in general is sufficiently certain : but it cannot control every other description ; and where there are two descriptions incompatible with each other, that which is the most certain must prevail. Cases might be put, where it must be evident that the parties were mistaken in the name, and therefore the name must yield to some other description more consistent with the apparent intent of the parties. It is true, that in cases of water courses or other natural boundaries, and in some cases of artificial boundaries, which are of much notoriety, and have therefore obtained well known names, the other descriptions must be very strong : but if they be sufficiently so, the name must give way, and be accounted for from the misapprehension or mistake of the parties. This dostrine was fully illustrated in the famous suit relative to the
 
 Cattail branch,
 
 between Bullock’s heirs and Littlejohn, which was more than once in this Court, and finally decided on the Circuit, to the entire satisfaction of the bench and the bar. Bislop’s patent begins “ at
 
 Jl,
 
 Whitehurst’s cor-, ncr, thence along Ward’s line east 8Ó poles, thence south
 
 on Ms line
 
 320 poles, to the back swamp.” Ward’s line' mentioned in the case, is almost 240 poles from White-hurst’s corner, running in a south-western direction, and
 
 *97
 
 would not not be intersected by an east line from the beginning; and is the boundary of a tract of land of Ward’s lying entirely east of that line. Of course it cannot be the line of Ward called for from A to B, or the first course in the patent. It is therefore almost certain, that it is not
 
 “
 
 the Ward’s line” called for in the second course of the patent, and therefore would not control the course and distance, which is from A to B, and from B to D
 
 ;
 
 leaving out the triangle B, C, D. But this is a question of fact, and the evidence should have been submitted to the Jury.
 

 I presume the Chief-Justice has correctly examined all the cases stated in his opinion $ but i have not had an opportunity of looking into them ; nor do I deem it necessary to do so, in order to illustrate my views of the points arising in this case — I am of opinion that there should be a new trial.
 

 *
 

 1
 
 Hayw. 23
 
 7
 

 *
 

 Diagram 1.
 

 †
 

 1 Hay w. 254.
 

 ‡
 

 Id. 496,
 

 §
 

 2 Id. 67,139.
 

 ǁ
 

 1 Hay w. 22.
 

 *
 

 Diagram 2, Taylor 118.
 

 †
 

 Diagram 3.
 

 ‡
 

 1Hayw. 22.
 

 §
 

 1Hayw.37.8.
 

 *
 

 1
 
 Hayw. 376.
 

 †
 

 Diagram 4. 1 Hayw. 283.
 

 ‡
 

 2 Hayw. 354.
 

 *
 

 Diagram 5,
 

 †
 

 2 Hayw. 301.
 

 *
 

 2 Hayw. 160.
 

 †
 

 2 Hayw. 183, Tayl. 301.
 

 *
 

 1 N. C. Term Rep. 1.
 

 †
 

 Id. 34.