R. J. YOPP AND WIFE, LIZZIE YOPP, v. J. H. AMAN.

(Filed 24 November, 1937.)

**1. Reformation of Instruments § 3—**

Where an incorrect description is incorporated in a deed by the mutual mistake of the parties, as between the parties, the deed may be reformed to express the true intent.

**2. Boundaries § 2—**

Where the parties have a survey made or go upon the land and agree upon a definite, marked line as the boundary of the tract to be conveyed, the line as so established contemporaneously with the execution of the deed will prevail over a different description in the deed.

**3. Boundaries § 8: Reformation of Instruments § 10—Evidence that parties agreed to definite boundary and different description was inserted in deed by mutual mistake, held sufficient for jury.**

In this proceeding to establish the true dividing line between the lands of plaintiff and defendant, the evidence tended to show that there was a lappage in the description of two ancient deeds to contiguous lands, that defendant had owned one tract for some years when he purchased the second tract, that he and his predecessors in title had been in actual possession of the first tract up to the line contended for by him, and that thereafter he and plaintiff went upon the land and he pointed out the fence and pine stumps as constituting the boundary between the tracts, and that he and plaintiff then and there made a contract of bargain and sale for the purchase of the second tract by plaintiff, that in the deed to plaintiff the description as contained in the ancient deed was used, and that defendant went into possession of the second tract up to the boundary as pointed out by plaintiff, and did not claim the lappage until a later survey for a loan disclosed the lappage, and did not interfere with defendant's possession up to the boundary as contended for by defendant until the institution of this action. *Held:* The evidence is sufficient to be submitted to the jury upon defendant's allegation that contemporaneously with the contract of bargain and sale, the parties went upon the land and agreed upon a definite, marked boundary line, so as to override the description contained in the deed actually executed.

APPEAL by plaintiffs from *Sinclair, J.,* at April Term, 1937, of ONSLOW. No error.

This is a processioning proceeding instituted before the clerk of Superior Court of Onslow County, under the statute, to establish the dividing line between the lands of the plaintiff, R. J. Yopp, and the lands of the defendant.

The defendant and his predecessors in title have for many years owned the tract of land referred to as the Dixon land. Thereafter, about the year 1917, defendant purchased an adjoining tract of land referred to as the French land. On 4 November, 1919, the defendant and his wife conveyed the tract known as the French tract to the plaintiff, R. J. Yopp. This deed, after describing the premises, contains a further provision as follows: "The same being the lands conveyed by Emeline French, widow of William French, by deed dated 22 May, 1917, and recorded in the register of deeds' office of Onslow County in book 125, page 233." Plaintiff instituted this proceeding to establish the true dividing lines between the tract purchased by him from the defendant and the Dixon tract, which is still the property of the defendant. The defendant, answering the petition, denied the location of the line as set out in the petition; described the line as contended for by the defendant, and alleged that the respondent sold the petitioner the land conveyed to the respondent by heirs at law of William French, which land did not include any of the Stephen Dixon tract, and that at the time of sale the plaintiff and the defendant went on the land and the plaintiff was shown the line where the fence was then standing, and is now standing on the same line with the exception of a few yards at the lower end, which was changed by the respondent for convenience, and that the petitioners after the purchase established their fence on that part of the line as now contended by the respondent.

The petitioner replied to the defendant's answer and set up the deed from the defendant and his wife to the plaintiff, reciting the description therein contained, and alleged that the westerly line of said tract as described in the deed is the true dividing line between the parties. The petitioner further pleaded the warranties contained in defendant's deed as an estoppel, and that the petitioner has been in possession of the land in dispute under color of title for more than seven years. Thereupon the defendant filed a rejoinder, in which he admitted that the description as contained in the deed from the defendant to the plaintiff described the line as contended for by the plaintiff, but alleged that the true boundary line is well marked, was pointed out to the plaintiff and agreed upon between the plaintiff and the defendant as being the southwesterly boundary line of the tract of land the defendant was then selling the plaintiff, and that the description in said deed embracing more land than that agreed upon between the parties was inserted in said deed by the mutual mistake of the parties; that it was

understood and agreed between the parties at the time of the execution of said deed that the defendant was selling and the plaintiffs were purchasing the French tract of land down to the marked and well established line pointed out to the plaintiff and agreed to between the parties. The defendant thereupon prayed that the said deed be reformed to express the true intent of the parties and that the line contended for by the defendant be established as the true dividing line between the lands of the plaintiff and the defendant. Issues of fact having been raised by the pleadings filed, the cause was transferred to the civil issue docket and came on for trial at the April Term, 1937, Onslow Superior Court. Issues were submitted to and answered by the jury as follows:

1. Was the land in controversy conveyed by defendant Aman to the plaintiff Yopp by mutual mistake of the defendant Aman and plaintiff R. J. Yopp?  Ans.: "Yes."

2. What is the true location of the dividing line between the lands of defendant Aman and plaintiff R. J. Yopp?  Ans.: 6 to 5 and 5 to 1.

Judgment was entered upon the verdict establishing the dividing line as contended by the defendant and found by the jury and the plaintiffs appealed.

*G. W. Phillips and R. A. Nunn for plaintiffs, appellants.*

*John D. Warlick, Summersill & Summersill, and I. M. Bailey for defendant, appellee.*         •

BARNHILL, J.   The controversy in this cause grows out of a lappage in the descriptions contained in two old deeds—one dated 10 August, 1874, which is the source of title of the Dixon tract owned by the defendant, and the other dated 1 February, 1872—which is the source of title of the French tract conveyed by the defendant to the plaintiff.

The one question presented to us for determination in plaintiff's brief is as follows: "Is there any evidence of mutual mistake herein?"  All of plaintiff's exceptions are directed to this question.  If there was no mutual mistake then the defendant's deed is binding upon him and he admits in his pleadings that the description contained in his deed to the plaintiff embraces the land in controversy—that is, the land between the true dividing line as contended by the plaintiff and the true dividing line as contended by the defendant.

If an incorrect description was incorporated in the deed from the defendant to the plaintiff by mutual mistake of the parties the defendant is entitled to so show and to have the deed reformed so as to conform to the true intent of the parties.  Speaking to the subject in *Cox v. McGowan,* 116 N. C., 131, *Avery, J.,* says: "All rules adopted for the construction of deeds tend towards one objective point.  They embody

16—212

what the law, founded on reason and experience, declares to be the best means of arriving at the intention of the parties. 3 Washburn, 428 and 429. The intention, of course, relates to the time when the deed is delivered, hence course and distance, or even what is considered in law a more certain or controlling call, must yield to evidence, if believed, that the parties at the time of the execution of a deed actually ran and located a different line from that called for, such evidence being admissible to show the description of the line to be a mistake. *Buckner v. Anderson,* 111 N. C., 572; *Cherry v. Slade,* 7 N. C., 82; *Baxter v. Wilson,* 95 N. C., 137; *Stanly v. Green,* 12 Cal., 148; 3 Washburn, 435.

"In support of the position stated, we find that Tiedeman, in his exhaustive work on Real Property, sec. 828, lays down the rule as follows: *'Contemporanea expositio est optima et fortissima in lege.* In construing deeds, courts endeavor to place themselves in the position of the parties at the time of the conveyance in order to ascertain what is intended to be conveyed. For in describing the property parties are presumed to refer to its condition at that time, and the meaning of their terms of expression can only be properly understood by a knowledge of their position and that of the property conveyed.' The familiar rule that the course of a stream called for as a boundary is to be determined by showing the location at the time of the conveyance is referred to as one illustration of the practical operation of the rule." *Realty Co. v. Boren,* 211 N. C., 446.

In *Clarke v. Aldridge,* 162 N. C., 326, it is said: "It has been long held for law, in this State, that when parties, with the view of making a deed, go upon the land and make a physical survey of the same, giving it a boundary which is actually run and marked, and the deed is thereupon made, intending to convey the land which they have surveyed, such land will pass, certainly as between the parties or voluntary claimants who hold in privity, though a different and erroneous description may appear on the face of the deed." *Reed v. Schenck,* 13 N. C., 415; *Cherry v. Slade, supra.*

In *Shaffer v. Gaynor,* 117 N. C., 15, it was held: "A deed is a contract and the leading object of the courts in its enforcement, where the controversy involves a question of boundary, is to ascertain the precise lines and corners as to which the minds of grantor and grantee concurred. Hence, though parol proof is not, as a rule, admissible to contradict a plain, written description, it is always competent to show by a witness that the parties by a contemporaneous, but not by a subsequent survey, agreed upon a location of lines and corners different from that ascertained by running course and distance." *Clarke v. Aldridge, supra; Realty Co. v. Boren, supra; Dudley v. Jeffress,* 178 N. C., 111.

Where the grantor and grantee actually go upon the land and agree upon well-marked corners and a definite, marked line as the boundary of a tract to be conveyed the same rule applies.

Was there then sufficient evidence to be submitted to the jury to support the allegation of the defendant that contemporaneously with, and as a part of the contract of bargain and sale, the plaintiff and the defendant went upon the premises and agreed upon the boundary line of the tract being conveyed to the plaintiff, so as to override the description contained in the deed actually executed and to show that it was the true intent of the parties that the deed should be so drawn as to set out and describe the line agreed upon as the boundary line between the French tract and the Dixon tract? If so, the judgment below must be affirmed. The evidence offered by the defendant and accepted by the jury in arriving at its verdict tends to show that the defendant and his predecessors in title owned the Dixon tract many years prior to the time the defendant acquired the French tract; that at point 5 there is a stake with pointers, at point 1 there is a stake and the corner of a wire fence, at 4 there is a corner of a fence and the fence continues along the line from 4 to 6 (which is the line contended for by the defendant). In the wooded portion of the land through which the line 4 to 6 goes there were marked trees; that the defendant and his predecessors in title have been in the actual possession of the Dixon tract up to the line from 4 to 5 for fifty years or more, and there has been a fence on the line for that period; that this line from 4 to 5 was actually surveyed about forty-five years ago; that the plaintiff and defendant went upon the premises and the defendant pointed out to the plaintiff two pine stumps in the Dixon line and showed him the fence that constituted the line now contended for by the defendant, and that they then and there made a bargain for the purchase and sale of the said premises with the said line as the boundary line between the Dixon and the French tract; that about 25 steps of the fence in the woods had been changed by the defendant from off the line for convenience; that after the purchase by the plaintiff he established this fence on the line as pointed out by the defendant; that the plaintiff went in possession of the tract conveyed to him down to the line so pointed out, but made no effort to take possession of, and made no claim to, either the wooded or the cleared portion of the land in controversy until 1924 (by his testimony, 1933 by defendant's testimony) at which time the plaintiff undertook to borrow money from a Federal agency and discovered from a survey made in furtherance of the loan that the courses of his deed extended over into the tract of land owned by the defendant and to the line now contended for by the plaintiff; that thereafter, without protest on the part of the plaintiff, the defendant still continued in actual possession of the lands

in controversy until the institution of this suit in March, 1936, and that the defendant is still in possession thereof.

While the description contained in the deed executed by the defendant to the plaintiff extends over into the tract of land which the defendant contends is the Dixon tract, he and his predecessors in title had long been in possession of the disputed land as the owners of the Dixon tract. The line as contended for by the defendant was surveyed more than forty-five years ago. It then can well be understood how the defendant misapprehended the meaning of the term contained in his deed to the plaintiff, to wit: "The same being the lands conveyed by Emeline French, etc., by deed dated 22 May, 1917." All the land he actually acquired by said deed was the land down to the line as established by the jury. He was already in possession of the lappage. Likewise the plaintiff so understood and construed the deed and his contract with the defendant. Notwithstanding the fact that most of the land on the westerly side of the line contended for by the defendant is under cultivation, the plaintiff went into possession of the tract purchased by him down to the line agreed upon and made no contention or claim to any lands west of said line until a survey under the description contained in his deed indicated that his line was west of the agreed line. He did not demand possession and acquiesced, without protest, in the continued use of same by the defendant for more than ten years before instituting this proceeding.

There was ample evidence to be submitted to the jury upon the first issue, and it seems that the jury was fully justified in finding that a dividing line was agreed upon at the time of the execution of the deed, and that the defendant did not intend to convey and the plaintiff did not understand that he was purchasing any lands westwardly of the line established by the jury. The jury, upon competent and sufficient evidence and under a proper charge, has answered the first issue in favor of the defendant. If the answer to that issue stands, it is admitted that the answer to the second issue is correct. In the trial of this cause we find

No error.