HAMLET HMA, INC. D/B/A HAMLET HOSPITAL, PLAINTIFF-APPELLANT v. RICHMOND COUNTY, RICHMOND MEMORIAL HOSPITAL, AND THAD USSERY, KENNETH R. ROBINETTE, JOHN B. GARNER, J. C. LAMM, R. LYNN McCASKILL, CRAIG S. McNEILL AND J. C. WATKINS, IN THEIR OFFICIAL CAPACITIES AS COUNTY COMMISSIONERS, AND FIRSTHEALTH OF THE CAROLINAS, INC., DEFENDANT-APPELLEES

No. COA99-716

(Filed 20 June 2000)

**1. Statute of Limitations— continuing wrong doctrine—not a malpractice action—not applicable**

The continuing wrong doctrine of Costin v. Shell, 53 N.C. App. 117, did not apply to provide relief from the statute of limitations in a declaratory judgment action arising from the conveyance of a hospital tract and facility because this was not a case involving professional malpractice. The general rule for claims other than malpractice is that a cause of action accrues as

soon as the right to institute and maintain a suit arises. Plaintiff here could have instituted the suit at the time of conveyance.

**2. Statute of Limitations— transfer of hospital facility—two- or three-year limitations period**

Plaintiff's action seeking a declaratory judgment and injunctive relief voiding the transfer of a hospital facility was barred by the statute of limitations where the deed to the hospital tract was executed on 28 March 1994, a quitclaim deed to personal property within the hospital was recorded on 20 February 1995, and the action was brought on 21 August 1998. Although plaintiff argued for the ten-year limitations period of N.C.G.S. § 1-56, the causes of action against the County and the county commissioners require the use of the two-year period of N.C.G.S. § 1-53(1) for actions against a local unit of government arising from a contract (a deed is a contract), while the three-year period of N.C.G.S. § 1-52(1) applies to claims against the defendants which are not local units of government.

**3. Statute of Limitations— transfer of hospital facility—session law—constitutionality—three-year limitations period**

A challenge to the constitutionality of Senate Bill 335 arising from the transfer of a hospital facility was time barred pursuant to the three-year period of N.C.G.S. § 1-52(2) ("upon liability created by statute") because the claim was that some or all of the defendants were liable for creating or following an unconstitutional law.

Appeal by plaintiff from orders entered 21 October 1998 by Judge Sanford L. Steelman, Jr. in Richmond County Superior Court. Heard in the Court of Appeals 21 February 2000.

*Moore & Van Allen, PLLC, by Denise Smith Cline and Robert A. Meynardie, for plaintiff-appellant.*

*Nicholls & Crampton, P.A., by W. Sidney Aldridge, for defendant-appellees Richmond County, Thad Ussery, Kenneth R. Robinette, John B. Garner, J. C. Lamm, R. Lynn McCaskill, Craig S. McNeill and J. C. Watkins.*

*Maupin Taylor & Ellis, P.A., by D. Royce Powell and James E. Gates, for defendant-appellee Richmond Memorial Hospital.*

*Kilpatrick Stockton LLP, by Noah H. Huffstetler, III, for defend-
ant-appellee Firsthealth of the Carolinas, Inc.*

*Attorney General Michael F. Easley, by Special Deputy Attorney
General James A. Wellons, on behalf of the North Carolina
Medical Care Commission, amicus curiae.*

McGEE, Judge.

Richmond Memorial Hospital (RMH), a nonprofit corporation for-
merly named Richmond County Memorial Hospital, was incorporated
in 1947 by approximately forty citizens of Richmond County. In 1948
three citizens deeded a tract of land (hospital tract) of approximately
twenty acres in Richmond County to RMH as a gift. In 1949 RMH con-
veyed the hospital tract to Richmond County (the County) in order
that the County would qualify for matching federal and state funds
under federal law for development of a hospital. For the next two
years the County invested approximately $250,000 in a facility to be
built on the hospital tract. The hospital opened in 1952 and since then
has been operated continuously by RMH. In 1952 the County leased to
RMH the hospital tract upon which the hospital is located for a sum
of $1.00 per year for an initial term of twenty-five years, including an
automatic renewal for another twenty-five year term expiring on 31
May 2002. The County did not invest in the hospital or hospital tract
after 1952.

The Richmond County Commissioners (county commissioners)
approved a resolution on 1 June 1992 authorizing the conveyance of
the hospital tract to RMH, citing "authority to do so under N.C.G.S.
131E-8." *See* N.C. Gen. Stat. § 131E-8 (1999) ("A [county] . . . upon
such terms and conditions as it deems wise . . . may sell or convey to
a nonprofit corporation . . . any rights of ownership . . . in a hospital
facility[.]") In the resolution the county commissioners specified that
"Richmond County never has been in the hospital business and does
not intend to get into the operation of a hospital in the foreseeable
future." The county commissioners asked state legislators on 7
December 1992 to introduce a bill in the North Carolina General
Assembly permitting the County to convey the hospital by means
other than those provided in N.C. Gen. Stat. § 131E-13(d)(2), which
requires that "At the meeting to adopt a resolution of intent, the
[county] . . . shall request proposals for lease or purchase by direct
solicitation of at least five prospective lessees or buyers." *See*
N.C.G.S. § 131E-13(d)(2) (1999).

During the 1993 legislative session, the North Carolina General Assembly enacted Chapter 10 of the 1993 Session Laws stating: "The provisions of G.S. 131E-13(d)(2) do not apply to the conveyance by Richmond County to [RMH], a North Carolina nonprofit corporation, of [the hospital tract]." In the 1995 session, the General Assembly approved Senate Bill 725 and enacted Chapter 597 of its 1995 Session Laws, entitled "An act to exempt Richmond County from certain restrictions relating to the sale of hospital facilities to nonprofit corporations." Section 1 of the Act rewrites N.C. Gen. Stat. § 131E-8(a) to read: "A [county] . . . may sell or convey to a nonprofit corporation . . . any rights of ownership . . . in a hospital facility . . . if the nonprofit corporation is legally committed to continue to operate the facility as a community general hospital[.]" Section 2 of the Act states: "This act applies to Richmond County only." N.C.G.S. § 131E-8(a) has since been modified and no longer refers to the County except in a notation by the publisher appearing below the statutory language. *See* N.C. Gen. Stat. § 131E-8(a) (1999) ("Local Modification—Richmond: 1995 (Reg. Sess., 1996), c. 597, s. 1.).

The County held public hearings to discuss the conveyance and executed a deed on 28 March 1994 conveying the hospital tract to RMH. RMH assumed the County's debt of approximately $3.7 million in bonds. *See* N.C. Gen. Stat. § 131E-8(b) (1999) ("[T]he nonprofit corporation . . . will provide sufficient money to pay the principal of and the interest and redemption premium, if any, on all bonds then outstanding[.]"). The deed between the County and RMH includes an express reversionary provision which would be triggered in the event the hospital tract were no longer used for the operation of a nonprofit hospital.

RMH and the County executed a "termination of lease," recorded on 20 February 1995, which ended the hospital tract lease between RMH and the County. The County also recorded a quitclaim deed on 20 February 1995 for any personal property located in the hospital. The deed states that "Richmond County has never claimed any title or interest in the personal property located in the hospital building[.]" RMH then constructed a $9,000,000 patient tower and birthing center, which included the renovation of nearly 25,000 square feet of the existing facility. RMH also hired 300 new employees, bringing the total number of employees to 750, and doubled the annual payroll to total $18,000,000. For the construction and renovation, RMH applied for a "certificate of need" (CON) which was issued by the North Carolina Department of Human Resources (NCDHR) as required by

N.C. Gen. Stat. § 131E-175 (1999) (entitled "Certificate of Need"). A "declaratory ruling" from NCDHR concluded that "RMH is the owner of all CONs issued to it as applicant, so long as RMH is in lawful possession of the real property comprising the Hospital[.]" The construction and renovation were financed with $12,000,000 in hospital revenue bonds issued by the North Carolina Medical Care Commission. RMH's title to the hospital tract was pledged as collateral for a letter of credit, which collateralized the bonds.

Plaintiff Hamlet HMA, Inc. was incorporated in 1987 as a North Carolina corporation and has since continuously operated Hamlet Hospital, which is the only other hospital in Richmond County. Hamlet HMA, Inc. is a wholly owned subsidiary of Health Management Associates, Inc. (HMA), a for profit Delaware corporation headquartered in Florida and traded on the New York Stock Exchange. HMA is not authorized to conduct business in North Carolina. Between 19 May 1992 and 30 March 1994, neither HMA nor Hamlet HMA, Inc. expressed interest in purchasing the hospital tract or made objection to its conveyance.

Sometime during or before 1994, RMH "finally recogniz[ed]" its "increasing competitive disadvantage" among larger hospital groups, and decided "an alliance with an acceptable larger entity [was] needed quickly." In November 1994, RMH began "discussions about selling or leasing its assets" primarily with HMA and two nonprofit corporations, Carolinas Medical System and FirstHealth of the Carolinas, Inc. (FirstHealth). RMH executed a letter of intent on 23 July 1998 to sell its assets for $44 million to FirstHealth, which is based in Pinehurst, North Carolina and is sole owner of Moore Regional Hospital. Following the sale, RMH planned to spend $14,000,000 to satisfy debts in bonds and loans that were secured by the hospital tract, and the remaining $30,000,000 for "charitable healthcare needs of the citizens of Richmond County and . . . other charitable purposes as permitted by the Internal Revenue Service."

The senior vice president of HMA stated in a letter dated 30 July 1998 to Thad Ussery, chairman of the county commissioners, and to Robert Hutchinson, chairman of the RMH board, that:

Hamlet Hospital (a Richmond County taxpayer) and [HMA] must voice [their] concern relating to the process for selling [RMH]. While it may or may not be legal to bypass the prescribed procedure that all other North Carolina Hospitals must follow in similar transactions, it is certainly not in the best interest of

Richmond Countians for [RMH] and Richmond County to consider the sale of [RMH] without an open and public bidding process. HMA, therefore, is submitting an alternative proposal[.]

In its proposal dated the same day, HMA offered to purchase the assets of RMH for $55,000,000, consisting of $45,000,000 to be paid to RMH and $10,000,000 to the County. RMH refused HMA's offer.

The county commissioners adopted a resolution on 3 August 1998 entitled

Resolution initiating the correction of certain statutory procedures affecting the transfer and conveyance of Richmond Memorial Hospital from Richmond County to Richmond Memorial Hospital, a North Carolina nonprofit corporation, and notice of intent to quitclaim the hospital facility as a corrective action pursuant to N.C. Gen. Stat. §131E-13(d), as amended.

According to the resolution:

The Commissioners will not request proposals for the lease or purchase of the Hospital facility by direct solicitation of at least five (5) prospective lessees or buyers as generally required by N.C. Gen. Stat. §131E-13(d)(2), since such requirements have been rendered inapplicable to the conveyance by Richmond County to [RMH], a North Carolina nonprofit corporation, of the real property on which the Hospital is situated, as stated in Senate Bill 335, described above[.]

The resolution also states "[t]he Commissioners shall conduct a public hearing on this matter[.]" The hearing was held on 23 and 24 August 1998.

Hamlet HMA, Inc. filed a verified complaint against defendant RMH, the County, and the county commissioners in their official capacities on 21 August 1998. The complaint asserts three claims for relief: (1) a declaratory judgment that the County's conveyance of the hospital tract and facility to RMH is void for failure to comply with N.C. Gen. Stat. § 131E-13(d); (2) a declaratory judgment that a session law enacted by the General Assembly, Senate Bill 335, is void and unconstitutional pursuant to Article II, section 24 of the North Carolina Constitution; and (3) a preliminary and permanent injunction restraining the County from conveying real or personal property to RMH unless it complies with N.C. Gen. Stat. §131E-13(d). Defendants RMH, the County, and the county commissioners filed

HAMLET HMA, INC. v. RICHMOND COUNTY

[138 N.C. App. 415 (2000)]

motions to dismiss in September 1998. The trial court entered orders on 21 October 1998 denying a preliminary injunction for plaintiff and dismissing plaintiff's complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the N.C. Rules of Civil Procedure, as requested by defendants' motions. Plaintiff timely filed notice of appeal.

In its brief, plaintiff contends the trial court erred in: (1) dismissing the complaint pursuant to N.C.R. Civ. P. 12(b)(6) because the complaint states valid causes of action for which relief may be granted; (2) dismissing the complaint pursuant to N.C.R. Civ. P. 12(b)(1) because plaintiff has standing; and (3) denying plaintiff's motion for a preliminary injunction because plaintiff is likely to succeed on the merits and will be irreparably harmed without the injunction.

[1] Defendants argue that plaintiff cannot prevail on its claims in that the applicable statute of limitations expired prior to filing of plaintiff's complaint. In the order denying an injunction for plaintiff, the trial court stated "[i]t is proper for the Court to consider the applicable statute of limitations[,]" and "[t]he plaintiff has failed to meet its burden of proof showing that it is likely to prevail on the merits of its case." The order dismissing plaintiff's complaint cites N.C.R. Civ. P. 12(b)(6), failure to state a claim upon which relief may be granted. As to this dispositive issue, plaintiff argues that its claims are not time-barred.

Plaintiff argues that regardless of the correct statute of limitations period, its complaint invokes the "continuing wrong doctrine" whereby "an ongoing violation causes the action not to accrue until the violation . . . ceases." Plaintiff cites *Costin v. Shell*, 53 N.C. App. 117, 280 S.E.2d 42, *disc. review denied*, 304 N.C. 193, 285 S.E.2d 97 (1981) to support its argument. In *Costin* our Court upheld an injunction granted by the trial court against the defendant, who had been violating podiatry statutes by unlawfully practicing podiatry and holding himself out as a Doctor of Podiatry when the complaint was filed. We stated that "the ten-year statute of limitations, if applicable, would not have been tolled at the time the complaint was filed" by the Board of Podiatry Examiners. *Costin*, 53 N.C. App. at 120, 280 S.E.2d at 44. Indeed, as to both malpractice actions and omissions the cause of action accrues and the statute of limitations begins to run at the time of defendant's last act giving rise to the cause of action. N.C. Gen. Stat. § 1-15 (c) (1999); *Callahan v. Rogers*, 89 N.C. App. 250, 253, 365 S.E.2d 717, 719 (1988). The general rule, for claims other than malpractice, provides that a cause of action accrues as soon as the right

to institute and maintain a suit arises. N.C. Gen. Stat. § 1-15 (a) (1999); *Thurston Motor Lines v. General Motors Corp.*, 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962). Plaintiff's complaint is for (1) a declaratory judgment as to the constitutionality of legislation governing conveyances, (2) a declaratory judgment upon the validity of a conveyance between two other parties, and (3) enjoining a conveyance between two other parties. Assuming *arguendo* that plaintiff has standing, plaintiff could have instituted this lawsuit at the time of the 1994 conveyance, and therefore the action accrued not later than 1994. *Costin* does not apply because this is not a case involving professional malpractice.

**[2]** Plaintiff also argues the correct limitations period is ten years pursuant to N.C. Gen. Stat. § 1-56 (1999), as cited in *Fulp v. Fulp*, 264 N.C. 20, 140 S.E.2d 708 (1965). Our Supreme Court in *Fulp* stated in dicta that "[t]he ten-year statute applies when the title to property is at issue, not where, as here, the action is merely for breach of contract[.]" *Fulp*, 264 N.C. at 27, 140 S.E.2d at 714 (citation omitted). This statement was made in the context of trust law. *See id.* ("Were plaintiff the *cestui que trust* of a resulting or a constructive trust, the ten-year statute would apply[.]"). Indeed, N.C. Gen. Stat. § 1-56 has been applied mainly in cases related to trusts, accountings, tax liens and fiduciary duty. *See, e.g., Tyson v. N.C.N.B.*, 305 N.C. 136, 286 S.E.2d 561 (1982) (action to impose constructive trust); *Nunnery v. Averitt*, 111 N.C. 394, 16 S.E. 683 (1892) (right to surcharge and restate a final account); *Bradbury v. Cummings*, 68 N.C. App. 302, 314 S.E.2d 568 (1984) (tax lien foreclosure); *Adams v. Moore*, 96 N.C. App. 359, 385 S.E.2d 799 (1989), *disc. review denied*, 326 N.C. 46, 389 S.E.2d 83 (1990) (breach of fiduciary duty). N.C.G.S. § 1-56 does not apply to this case.

In arguing for a ten-year limitations period, plaintiff denies that the shorter limitations periods argued by defendants apply. Defendants first argue for the application of N.C. Gen. Stat. § 1-53 (1), providing a two-year limitations period for "[a]n action against a local unit of government upon a contract, obligation, or liability arising out of a contract, express or implied." Alternatively, defendants ask us to apply the three-year limitations period in N.C. Gen. Stat. § 1-52 (2) for "a liability created by statute, either state or federal, unless some other time is mentioned in this statute creating it."

In *Liptrap v. City of High Point*, 128 N.C. App. 353, 496 S.E.2d 817, *disc. review denied*, 348 N.C. 73, 505 S.E.2d 873 (1998), current and retired city employees sued the City of High Point claiming that

HAMLET HMA, INC. v. RICHMOND COUNTY

[138 N.C. App. 415 (2000)]

the City's resolution freezing the amount of their longevity pay and subsequent refusals to pay additional amounts to those plaintiffs reaching greater increments of service, constituted and continued to constitute breaches of their employment contracts. The City argued that the plaintiffs' cause of action accrued, and the two-year statute of limitations in N.C.G.S. § 1-53 (1) began to run, upon the passage of the City's 1992 resolution freezing the amount of the longevity pay. Our Court agreed, stating that the statute of limitations begins to run as soon as the injury becomes apparent or should reasonably become apparent, regardless of whether further damage could occur. Thus, the plaintiffs' claims were barred. *Liptrap*, 128 N.C. at 356, 496 S.E.2d at 819.

Defendant RMH cites *Colombo v. Dorrity*, 115 N.C. App. 81, 443 S.E.2d 752, *disc. review denied*, 337 N.C. 689, 448 S.E.2d 517 (1994), in which the driver of a vehicle sued the City of Durham for damages sustained in an accident on a state highway based on the City's contract with the Department of Transportation to maintain the state highway. Our Court held that any liability the City might have for the accident would arise out of that contract, but the two-year statute of limitations in N.C.G.S. § 1-53 (1) applied. We therefore concluded that plaintiff's claim was barred as the action occurred on 16 July 1988 and the complaint was filed on 17 July 1991. *Colombo*, 115 N.C. App. at 86, 443 S.E.2d at 756.

Our Court also applied N.C.G.S. § 1-53 (1) in *Cooke v. Town of Rich Square*, 65 N.C. App. 606, 310 S.E.2d 76 (1983), *disc. review denied*, 311 N.C. 753, 321 S.E.2d 130 (1984). In *Cooke*, the plaintiff sued on a contract with the Town that provided the Town was to repay plaintiff from the taxes and fees collected from the residents of Cooke Circle once ten houses had been built in that area. Ten houses had been built by 1970, and plaintiff instituted the action in 1980. Our Court held that the plaintiff failed to present his claim within the two-year statute of limitations prescribed by N.C.G.S. § 1-53 (1) and his claim therefore was barred. *Cooke*, 65 N.C. App. at 608, 310 S.E.2d at 78.

Similar to *Liptrap*, *Colombo* and *Cooke*, plaintiff's causes of action against the County and the county commissioners in the case before us to enjoin the conveyance and for a declaratory judgment upon the validity of the conveyance, require the use of N.C.G.S. § 1-53 (1) for actions against a local unit of government upon liability arising out of a contract. "A deed is a contract[.]" *Yopp v. Aman*, 212 N.C. 479, 482, 193 S.E. 822, 824 (1937) (citation omitted); *see also*

*Meachem v. Boyce*, 35 N.C. App. 506, 510, 241 S.E.2d 880, 883 (1978) (citation omitted) ("The purported deed is a contract to convey[.]"); *Shingleton v. State*, 260 N.C. 451, 454, 133 S.E.2d 183, 186 (1963) ("The easement in the instant case is by deed, which is of course a contract."); *Butler Drive Property Owners Assn. v. Edwards*, 109 N.C. App. 580, 584, 427 S.E.2d 879, 881 (1993) (citation omitted) ("An easement deed is a contract."). Plaintiff's causes of action against the County and the county commissioners are barred as they were filed on 21 August 1998 and the deed conveying the hospital tract was exe-·cuted on 28 March 1994. This result extends also to the quitclaim deed for personal property located in the hospital, which was recorded on 20 February 1995.

Plaintiff alleges the same claims against defendants RMH and FirstHealth, which are not local units of government. Therefore, the general three-year limitations period for actions upon contract liability applies to these claims. N.C. Gen. Stat. § 1-52 (1) (1999). "[W]hen such a cause of action is targeted against a local unit of government, the general three-year limitations period gives way to a specific two-year limitations period provision created for such a contingency." *McCullough v. Branch Banking & Trust Company*, 35 F.3d 127, 132 n.2 (4th Cir. 1994), *cert. denied*, 513 U.S. 1151, 130 L. Ed. 2d 1069 (1995). Again, plaintiff's action was filed on 21 August 1998 and even with a three-year limitations period its cause of action was time-barred.

[3] Plaintiff also challenges the constitutionality of Senate Bill 335 which absolves all defendants from their liability to plaintiff for participating in the conveyance process without requiring outside bids. In *Rose v. Currituck County Bd. of Educa*tion, 83 N.C. App. 408, 350 S.E.2d 376 (1986), the plaintiff sought reinstatement as a teacher in the defendant's school system, back pay, and other benefits arising out of the defendant's alleged violation of the teacher tenure act. The defendant argued that because plaintiff resigned as a probationary principal, he automatically forfeited his rights as a career teacher and the dismissal procedures for career teachers were inapplicable. Our Court disagreed with the defendant and held that plaintiff, as a probationary principal, had a statutorily protected right as a career teacher until he resigned as a career teacher, which could not be stripped from him without proper notice and a hearing. The defendant argued that the plaintiff's action was barred by the two-year statute of limitations in N.C.G.S. § 1-53 (1), but our Court stated that the applicable statute of limitations was the three-year statute in

N.C.G.S. § 1-52 (2) "upon liability created by statute." *Rose*, 83 N.C. App. at 412, 350 S.E.2d at 379. We apply the same limitations period to plaintiff's constitutional challenge in this case for the reason that plaintiff's claim in the complaint for "declaratory relief regarding constitutionality of Senate Bill 335" is a claim that some or all defendants are liable for creating or following an unconstitutional law. Therefore plaintiff's constitutional claim asserted is time-barred pursuant to N.C.G.S. § 1-52 (2).

Plaintiff's claims for a declaratory judgment as to the conveyance of the hospital and for injunctive relief against the County and the county commissioners are barred by N.C.G.S. § 1-53 (1). The same claims, as asserted against RMH and FirstHealth, are not timely filed pursuant to N.C.G.S. § 1-52 (1). Finally, plaintiff's claim for declaratory relief regarding the constitutionality of Senate Bill 335 is also barred by the limitations period in N.C.G.S. § 1-52 (2).

The orders of the trial court are affirmed.

Affirmed.

Judges EAGLES and HORTON concur.